## C. W. BAILEY *v.* THE TROY & BOSTON R. R. CO.*

### *Master and Servant.   Negligence.*

The plaintiff's horse was frightened at a steam shovel, and ran, throwing the plain-
tiff out of his carriage, who thereby received the injury complained of.   The
shovel was located on the defendant's land, used to obtain gravel to ballast its
road-bed, near the highway in which the plaintiff was travelling.   The defend-
ant's evidence tended to show that the shovel was operated and wholly con-
trolled by one M., an independent contractor and his servants, although its
use was contemplated when the contract was made; and the question being
whether the defendant or M. was liable, the court charged in effect, that the
defendant's liability was co-extensive with that of M., if it was part of the
agreement that the shovel should be used in doing the work;   *Held*, error;
that, the work being lawful, and the shovel not a nuisance, until it became such
by negligent *use*, the defendant was not liable, unless the relation of master
and servant existed between it and those operating the shovel; unless it not
only prescribed the end, but directed the means and methods; and that the in-
quiry was, whether the defendant or M. was the principal or master in operat-
ing the shovel; if M., and it became a nuisance through his negligence, he
alone was liable, although it was understood by the defendant, in making the
contract, that the shovel was to be used.

CASE to recover for injuries.   Trial by jury, June Term,

*Heard, General Term, 1883.

1881, Bennington County, TAFT, J., presiding. Verdict for the plaintiff.

The testimony of the plaintiff tended to show that the highway leading from Pownal to Williamstown, Mass., runs parallel with the railroad operated by defendant; that at a place in Pownal, said highway runs for a distance of about forty rods alongside of the railroad, and that on the opposite side of the said highway at this place the defendant owns a gravel bed or bank; that in the fall of 1877, the defendant had a steam shovel at work in said gravel bed; that on the morning of the      day of      A. D. 1877, he had occasion to pass over this highway, in going from his home in Pownal to North Adams, Mass.; that as he approached this strip of road, knowing the shovel to be in the pit, and fearing it might scare his horse, he got out of his wagon and let his brother drive the horse; that he travelled behind his wagon, and the team passed by the shovel, which was situated near the highway, and being worked at the time; that as he was passing over this strip of road, and both before and after he passed the shovel, his horse was somewhat frightened, jumped forward some, and acted somewhat afraid; that after he had got some distance beyond the nearest point in the highway to the steam shovel, and at a time when the shovel was not in actual operation, but while the horse was somewhat restive and still showing signs of fear, plaintiff's brother stopped the wagon for plaintiff to get in, and plaintiff did so; that just after he had got into the wagon and while he was taking his seat, the operation of the shovel recommenced and the noise frightened the horse, which backed a little, and then jumped forward so quickly that it threw him out over the back of the seat and hurt him; and this was the injury complained of.

The steam shovel at the time of the accident was located on lands of the defendant, which it used for a gravel bed, from which to obtain gravel to ballast its road bed, and was outside the limits of the highway; and the defendant's testimony tended to show that the shovel was eight rods from the nearest point of the highway and twenty-nine rods from the place of accident.

The testimony of plaintiff tended to show that at the time he was passing by, the shovel was at work, and by the rattling of chains, blowing off steam, and dumping gravel

into the cars, made such noises as would ordinarily frighten horses, and did in fact frighten his at the time he received the injury; but the plaintiff did not claim that this shovel was being operated in a different manner or with more noise than other steam shovels usually are, or that this could have been operated with less noise.

The defendant's testimony tended to show that at the time the plaintiff was passing by, the steam shovel was not in operation and was making little or no noise; that the plaintiff's horse passed by the shovel quietly and was not scared thereby; and that at the time when his horse started up and threw the plaintiff out as he testified, the shovel did not frighten the horse at all, and that at this time the plaintiff and his team were twenty-nine rods away from the shovel:

That in 1877, steam shovels were in general use in the country by railroads, and were operated substantially in the same manner and used for the same purposes as this one was:

That in August, 1876, and after the defendant had run a side track from its main line across the highway into the gravel pit, and after it had taken considerable gravel therefrom for use upon its road bed, and was still so taking it in cars loaded by hand, it received a proposition in writing from one Edmund Rice to load the cars, which proposition was as follows:

"Proposal for loading gravel at the Pownal gravel bank:

"We will lay the gravel into cars and deliver them, made up into trains ready for the railroad company's locomotive to take away from gravel bank. We will furnish twenty first-class dump cars, and if from any delay of ours a sufficient quantity of gravel is not loaded to keep the railroad company's laborers in work on the dump, their lost time shall be chargeable to our expense.

"The railroad company to furnish ten flat cars and twenty dump cars. Also to furnish all necessary track material for gravel-pit tracks. The railroad company to furnish us fuel for our locomotive engines while at work in the pit. We to be paid seven (7) cents per cubic yard as per measurements of the railroad company's engineers.

"Payments to be made on the work of one month on or about the 10th of the month following.

"Dated Troy, August 19, 1876."      (Signed.)

The defendant further showed, that upon receiving the said proposal, on or about its date, it accepted the proposition of said Rice, and took its men away from the gravel pit, and that thereupon Rice brought into the pit his locomotive engine for hauling his cars and making up his trains, and also brought his steam shovel and set it up, and his cars and workmen; built such tracks as he desired, and soon commenced to fill the cars and make up his trains as agreed by his contract; that he so continued to load the cars, using the steam shovel, and making up and delivering the trains until about December, 1876, when the work stopped for the winter; that in the spring of 1877, and before work again commenced, the defendant made an agreement with one C. D. Munson, who was really one of the parties in interest in 1876, by which said Munson was to go on and work under the contract of the previous year made with Rice,—load the cars and make up and deliver the trains upon the same terms and conditions as the previous year, and the defendant was to do and perform the same things on its part; that thereupon Munson proceeded to load the cars and make up and deliver the trains upon the side track, to defendant, who took them thus made up and drew them to its dumping ground, and returned them empty to the side track in the gravel pit. Munson used the same locomotive for making up the trains, and the same steam shovel for loading the cars that had been used the year before; the same having remained in the gravel bed during the winter. Munson so continued to work the gravel bed during the summer of 1877, until about November 1, 1877, and was so working it at the time plaintiff received his injury.

And the defendant's testimony further tended to show, that during all this time that Munson worked the pit, as well as when Rice worked it, it neither had nor claimed to exercise any control over them, or the way and manner in which they loaded their cars, made up their trains, or run and operated their engine or steam shovel, and claimed no right so to do, but that both Rice and Munson operated the bed and controlled their workmen, loaded the cars, made up the trains and operated the locomotive and steam shovel in such a manner and in such parts of the bed as they saw fit.

The work of loading the cars could be performed either by hand labor or with the steam shovel.

The evidence tended to show that the defendant retained control as to whether or not the said Rice and Munson should operate said steam shovel in said gravel pit; and also that it was well understood when said proposition was made and accepted that the contractor was to use a steam shovel in doing the work, and to place it in defendant's gravel pit, the change from the hand labor method being desired by the defendant, in order that the work might be more rapidly prosecuted; and also that when the new contract was made with Munson, in the spring of 1877, it was understood and expected by both parties that the work that year was to be done with said steam shovel then standing in said gravel pit.

There was also testimony on the part of the plaintiff tending to show that soon after said steam shovel was first placed in said gravel pit, the selectmen of Pownal objected to its use as unsafe for highway travellers, and had an interview with defendant's president about it, and demanded that the shovel should be taken out, or a bond given to secure payment of damages, if any, or another passage way for teams provided; and that said president in part satisfied said selectmen by agreeing to keep a man on duty at that point for the purpose of warning travellers, and leading teams past the locality while the shovel was in use; and that a man was so stationed and kept at said point in the highway during a part or all of the time said shovel was operated there in 1876.

The court charged the jury in part:

"If you find that this shovel, while it was either lying still or in operation, was so near the highway that by its appearance or its noise, or the noise of the engine used with it, would have such a tendency that it would naturally frighten a horse of ordinarily gentle habits when passing by; and you also find that the horse in this case was at the time this accident happened frightened by means of it, or the noise made by it or the engine used with it, because if the fright of the horse was not occasioned by this steam shovel or the use of it there, the plaintiff would have no right to recover; and the injuries, which the plaintiff by his testimony tends to show he sustained, were the direct result of the accident occasioned by such fright of the horse in

the manner I have stated for this machine or the use of it, then your verdict should be for the plaintiff." * * * *

"And if you also find that this contract was made between Munson and the defendant, with the agreement or understanding between them, that a steam shovel should be used in doing this work; that this gravel should be loaded with a steam shovel, then the court tell you that the defendant would be liable in the same manner and to the same extent, that Munson, who did the work and who put the shovel there and used it, would be liable; that the liability of the defendant in that respect would be the same as the liability of the contractor who did put the shovel there, and did this work, if you find that there is any liability that attaches to them under the rules that I shall give you.

"But if you find that there was no agreement, no understanding between the defendant and Munson as to how the gravel should be loaded, or what it should be loaded with, or whether a steam shovel should be used in the performance of the contract; and that the defendants actually had no control over or management of the steam shovel or the work that was done there, and gave no directions as to the use of the shovel, or the manner in which the work was to be done, either to Munson or to any of his servants or workmen employed by him, then the defendants would not be liable and your verdict should be for the defendant." * * * *

"But the question as to whether the shovel is a nuisance is one of fact for you to determine; and that is an important question for you in this case; that is, whether the steam shovel, situated as it was, near the road, and used as it was by the men in loading the cars, was of such a character, either in its appearance or the noise made by it in being moved about, or in being worked, making noise with its wheels and chains, or the noise of the engine that was used in operating it, that it had a natural tendency to frighten an ordinarily gentle horse. This is one of the main questions to be presented to you in this case."

*T. Sibley* and *J. K. Batchelder*, for the defendant.

The doctrine of *respondat superior* has no application to the facts in the case. It does not apply unless the relation of master and servant exists. That rule is founded upon

the principle that the superior has a right to exercise control over his subordinate; and having that right, he is presumed to exercise it, and consequently directs or at least sanctions what the subordinate does.

In the case at bar the defendant had no control over the management of the machine; the workmen who operated it were the servants of Munson, not of the railroad. The defendant could not direct or control them; could not order when or where they should or should not work; when they should or should not stop the shovel. Munson was the one, and the only one, who controlled this, and he had the exclusive control and direction of it; the workmen were his workmen.

The relation of master and servant existed between them and him, and him alone. They were the subordinate; he the superior. To him they looked for direction in their work, not to the company.

The charge of the court was clearly error. *Pawlet* v. *R. & W. R. R. Co.* 28 Vt. 298; Wood Mas. & S. ss. 313, 608, 614; *Cuff* v. *N. & N. Y. R. R.* 30 N. J. 22; *Quarman* v. *Burnett*, 6 M. & W. 499; *Reedie* v. *L. & N. W. R. R. Co.* 4 Exch. 243; *Overton* v. *Freeman*, 11 C. B. 867; *Peachy* v. *Rowland*, 13 C. B. 182; *Steele* v. *S. E. R. R.* 16 C. B. 550; *Murphey* v. *Caralli*, 3 H. & C. 462; *Murray* v. *Currie*, L. R. 6 C. P. 24; *Felton* v. *Deal*, 22 Vt. 171; *Callahan* v. *R. R. Co.* 23 Iowa, 562; *Cuff* v. *R. R. Co.* 35 N. J. 17; *Blake* v. *Ferris*, 5 N. Y. 48; *Stores* v. *Utica*, 17 N. Y. 104; *McCafferty* v. *R. R. Co.* 61 N. Y. 178; *King* v. *R. R. Co.* 66 N. Y. 182; Pierce R. R. 286; Red. R. R. 376; *Cunningham* v. *R. R. Co.* 32 Am. Rep. 636; Wood Nuis. 79, 310; 1 Ad. Torts, 3.

*J. L. Martin* and *A. F. Walker*, for the plaintiff.

One sustaining special damage from a public nuisance may maintain an action against the person erecting or continuing the nuisance. *Abbott* v. *Mills*, 3 Vt. 521; Wood Nuis. 621, 627, 653, 671. The steam shovel was a public

nuisance, situated and operated as it was. It was a question for the jury, and was properly submitted. Wood Nuis. ss. 1, 4, 16, 75, 142, 149, 277, 292, 624, 663, and p. 582; *House v. Metcalf*, 27 Conn. 631; *Knight v. Goodyear*, 38 Conn. 438; *Morse v. Richmond*, 41 Vt. 435; *Jones v. R. R. Co.* 107 Mass. 261; *Cole v. Fisher*, 11 Mass. 137; *R. R. Co. v. Barnet*, 59 Penn. St. 259. The defendant cannot evade liability for the nuisance by showing that it hired another to commit it. Pierce R. R. 288. The principal is liable if the nuisance is incidental to the contract. Whar. Neg. s. 186. If the contractor does the thing which he is employed to do, the employer is as responsible for the thing as if he had done it himself. *Water Co. v. Ware*, 16 Wall. 566; *Robbins v. Chicago*, 4 Wall. 678; *Hole v. R. R. Co.* 6 Hurl. & Nor. 488; *Ellis v. Sheffield Gas Co.* 2 El. & Bl. 767; *Picard v. Smith*, 10 C. B. N. S. 470.

The principal is liable if it retained the power of controlling the method in which the work was being done. " The evidence tended to show that the defendant retained control as to whether or not said Rice & Munson should operate said shovel in said gravel pit." This question was left to the jury by the charge. It having been answered affirmatively by the verdict, it is clear that the defendant is liable as principal in respect to the maintaining of the nuisance.

It must always be kept in mind that the owner of property who negligently permits to remain on it a nuisance which he has the power of removing, is liable to third parties for the damage thereby produced, on the principle, *Sic utere tuo ut alienum non lœdas.* Whar. Neg. ss. 182, 188, 786; *Clark v. Fry*, 8 Ohio St. 359; Shearm. & Red. Neg. s. 84; 16 Moak, 374; Cooley Torts, 547; *Angus v. Dalton*, L. R. 4 Q. B. Div. 162; 28 Moak, 706, *n.*

The opinion of the court was delivered by

POWERS, J. The defendant's evidence tended to show, that the steam shovel in use when and by which the plain-

tiff's injuries were occasioned, was operated by Munson, without any control or right of control over it, or the manner of its use by the defendant; that Munson was an independent contractor, who supplied the shovel and operated it by his own servants, although it was contemplated by the defendant that it should be used when the contract was made by the defendant with Munson.

Upon this phase of the evidence, the defendant insisted and requested the court to charge, that Munson, if anybody, was solely liable for the plaintiff's damages.

In answer to this request the court charged the jury as follows: " If you find that the defendant made the contract with Munson that he, Munson, should do this work of loading the gravel, and I do not understand that there is any controversy between the parties as to the facts with reference to the contract in this respect,—that such a contract did exist, or the terms of it with relation to the amount to be paid him for doing the work under this contract; and if you also find that this contract was made between Munson and the defendant with the agreement or understanding between them that a steam shovel should be used in doing this work,—that this gravel should be loaded with a steam shovel, then the court will tell you that the defendant would be liable in the same manner and to the same extent that Munson, who did the work and who put the shovel there and used it, would be liable; that the liability of the defendant in that respect would be the same as the liability of the contractor, who put the shovel there and did the work, if you find that there is any liability that attaches to them under the rule that I shall give you." The rule given the jury was this: if the shovel, while lying still, or in operation by its appearance or its noise, or the noise of the engine used in operating it was calculated to frighten horses of ordinary gentleness, the plaintiff should recover.

In other words, the jury was told that the defendant's liability was co-extensive with Munson's, if it was part of

the agreement or understanding of the parties for doing the work that Munson should use a steam shovel.

If the work contracted to be done was in itself unlawful, or the shovel a nuisance *per se*, the instruction given the jury would be unobjectionable. But the work was lawful, and the shovel was an appliance customarily employed by railroads in work of this kind. It could work injurious results to third persons only by its negligent *use*. The injury done in this case was not by its frightful appearance. The plaintiff's horse passed by it without difficulty; but after passing it in safety its operation commenced; and in this the plaintiff avers negligence. Was this the negligence of Munson's servants, or the servants of the defendant? The defendant cannot be made liable unless the legal relation of master and servant subsisted between it and the men operating the shovel. The fact that Munson was a contractor and employed these men does not of itself preclude the relationship of master and servant between the defendant and these men.

The inquiry in the case is, who was the principal or master in this work, Munson or the defendant? A master is one who not only prescribes the end, but directs, or at any time may direct, the means and methods of doing the work. If he merely prescribes the end and contracts with another to accomplish the end by such means or methods as such other may in his discretion employ, the latter is as to such means and methods not a servant, but a master; and for negligence therein is alone answerable.

This rule of law is forcibly illustrated by the case of *Rourke* v. *White Moss Colliery Co.* L. R. 2 C. P. Div. 205. There the defendants, after partly sinking a shaft into their colliery, agreed with W. to finish the work for them on terms, among others, that defendants should provide engine power and engineers to work the engine. The engine, that had been used by the defendants in excavating the shaft, was thereupon handed over to W. The same

engineer remained in charge of it, and continued in the pay of the defendants as before, but was subject to the orders of W. It was held that the engineer was the servant of W., and not of the defendants; and that W. alone was answerable for his negligence in operating the engine.

*Murray* v. *Currie*, L. R. 6 C. P. 24, is another recent English case in point. The defendant, a ship-owner, employed a stevedore to unload his vessel. The stevedore employed his own laborers, among whom was Davis, one of defendant's crew, whom the stevedore paid, and over whom he had entire control. The plaintiff was injured by the negligence of Davis; and it was held that the defendant was not liable. *See,* also, Wood Mas. & S. s. 313; *Callahan* v. *R. R. Co.* 23 Iowa, 562.

The conflict in the cases upon this subject doubtless arises from inattention to the character of the work to be done. If the work to be done is committed to a contractor to be done in his own way, and is one from which, if properly done, no injurious consequences to third persons can arise, then the contractor is liable for the negligent performance of the work.

If, however, the work is one that will result in injury to others unless preventive measures be adopted, the employer cannot relieve himself from liability by employing a contractor to do what it was his duty to do to prevent such injurious consequences. In the latter case the duty to so conduct one's own business as not to injure another continuously remains with the employer. *Bower* v. *Peate*, L. R. 1 Q. B. Div. 321.

In this case, if the shovel became a nuisance merely because it was negligently operated, and such operation was controlled by Munson, he is the author of the nuisance, and answerable for the consequences; and the understanding between the parties that the shovel should be used in the work, does not change the liability to the defendant. This

understanding calls for the proper, not negligent, use of the shovel.

Judgment reversed, and case remanded.