LOUIS MORRIS *v.* ANDREW TRUDO.

October Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed November 12, 1909.

*Master and Servant—Existence of Relation—Injuries to Third Persons—Temporary and General Master—Directed Verdict —Negligence—Question for Jury.*

One to whom the servant of another has been lent or hired has the responsibilities of a master in so far, and only so far, as he may exercise the authority of a master.

In doing an act one cannot be the servant of both a general master and a temporary master, but he may in the same engagement be the servant of his general master in the doing of certain acts and the servant of a temporary master in the doing of other acts.

Where the owner of a team lets it and a driver temporarily to another, who, under the contract, has no control over the management of the team, the relation of master and servant continues to exist between the owner and the driver as regards the latter's negligence in driving.

In reviewing the granting of defendant's motion for a directed verdict, the evidence must be viewed in the light most favorable to plaintiff.

In an action for injuries from the alleged negligent starting of a team
    by its driver, the questions of his negligence and of plaintiff's
    contributory negligence *held*, under the evidence, for the jury.

CASE for negligence.   Plea, the general issue.   Trial by jury
at the December Term, 1909, Addison County, *Stanton*, J., pre-
siding.   Verdict and judgment for the defendant.   The plaintiff
excepted.   The opinion states the case.

*Brown & Hopkins* for the plaintiff.

The driver was defendant's servant, in his employ, subject
to his orders, and not under the control of the city foreman as
regards the management of the team; hence, defendant is liable
for injuries resulting from that servant's negligent driving.
*Murray* v. *Dwight*, 161 N. Y. 301, 55 N. E. 901; *The Slingsby*,
120 Fed. 748, 57 C. C. A. 52; *Huff* v. *Ford*, 126 Mass. 24; *Bren-
nan* v. *Berlin Iron Bridge Co.*, 74 Conn. 382; 44 N. Y. Sup. 234;
4 Thomp. Neg. §§3725, 5004, 5006; 26 Cyc. 1284, 1285; *Alton
Lime & Cement Co.* v. *Calvey*, 47 Ill. App. 343; *Morgan* v. *Smith*,
159 Mass. 570; *Burrill* v. *Eddy*, 160 Mass. 198; *Breslin* v. *Sparks*,
97 N. Y. App. Div. 69; *Delaware etc. R. Co.* v. *Hardy*, 59 N. J. L.
35, 34 Atl. 986; *The Lisnacrieve*, 87 Fed. 570.

*F. W. Tuttle* for the defendant.

Defendant had no such control of the driver as made him
defendant's servant in respect of the management of the team.
Judge Cooley says, ''Where the servant of one person is loaned or
hired to another, he becomes for the time being a fellow servant
of the other employees of the latter.''   2 Cooley on Torts, 1087;
*Samuelian* v. *Am. Tool Co.*, 168 Mass. 12; *Delaware etc. Co.* v.
*Hardy*, 59 N. J. L. 35; *Wischam* v. *Rickards*, 136 Pa. St. 109.

It is well settled that one who is a general servant may be
lent or hired by his master to another for some special service,
so as to become as to that service the servant of the third party;
the test is, whether in the particular service he is engaged to
perform, he continues liable to the direction and control of his
master, or becomes subject to that of the party to whom he is
lent or hired.   *Couglan* v. *Cambridge*, 166 Mass. 268; *Hasty* v.

*Sears,* 157 Mass. 123; *Ward* v. *New England Fibre Co.,* 154 Mass. 419; *Samuelian* v. *Am. Mach. & Tool Co.,* 168 Mass. 12; *Haskel* v. *Boston Dist. Mess. Co.,* 190 Mass. 189; *Byrne, Admr.* v. *K. C. etc. Co.,* 61 Fed. 605; *Donovan* v. *Laing,* 1 Q. B. 629; *Rourke* v. *White Moss Colliery Co.,* L. R. 2 C. P. Div. 205; *Powell* v. *Virginia Const. Co.,* 88 Tenn. 692; *Miller* v. *Minn. & N. W. R. Co.,* 76 Iowa 655.

HASELTON, J.  This was an action on the case to recover damages for injuries which the plaintiff received July 3, 1907. The injuries to the plaintiff resulted from his falling from the defendant's wagon, which at the time was driven by Charles Trudo, a brother of Andrew Trudo, the defendant, and the action is based on the claim that the fall resulted from the negligent driving of Charles as the servant of the defendant his brother.

At the time of the accident the City of Vergennes was carrying on work on its streets and sidewalks.  This work was under the supervision of one Henry Lavalley who was then acting as superintendent of streets.  It was the duty of Lavalley to hire men and teams for the prosecution of the work and, as his position implied, to superintend and direct the same.  In the discharge of his duties he hired the plaintiff as a laborer to do whatever might be required of him, and he also hired of the defendant a double team with a driver.  The driver, furnished in accordance with the hiring, was Charles Trudo, above referred to as the brother of the defendant.  By the terms of the hiring, Charles, the driver, was to do with the team whatever work he was set to do by Lavalley, whether moving stones or using a scraper or drawing gravel.  In the drawing of gravel it was for Lavalley to direct where the gravel should be taken from, where it should be unloaded and how it should be placed.  At the time of the accident, the plaintiff, by direction of Lavalley, was assisting Charles in shoveling out a load of gravel, and the unloading was practically done when the horses either started up, or were started up by Charles, and the plaintiff who was at the rear end of the wagon box, with one foot on a wheel, fell, or was thrown, to the ground.

At the close of the plaintiff's evidence the defendant moved that a verdict be directed in his favor on three grounds which were in substance these:  First.  That the evidence did not tend

to show that the plaintiff's injuries resulted from negligence on the part of the driver. Second. That, in the circumstances disclosed by the plaintiff's evidence, if the driver did negligently start up the horses he was not, in the management of the team, the servant of the defendant; that the defendant was not in such control of the team, or driver, as to render him liable in consequence of the latter's negligence. Third. That there was no evidence tending to show freedom from contributory negligence on the part of the plaintiff. The motion was sustained. A verdict was directed for the defendant and the plaintiff excepted.

We first consider whether on the evidence the relation of master and servant in respect to the thing complained of existed between the defendant and the driver. The precise question is whether or not, though the team and driver had been temporarily hired out by the defendant, the driver, in the specific detail of managing or handling the team, remained the servant of the defendant of whom the team was hired.

One to whom the servant of another is temporarily lent, or hired, has for the time being the responsibilities of a master in so far, and only in so far, as he may exercise the authority of a master. *Bailey* v. *Troy & Boston R. Co.,* 57 Vt. 252, 261; *Pawlet* v. *Rutland & Washington R. Co.,* 28 Vt. 297, 300.

The contract by which the defendant hired his team with its driver to the City of Vergennes, or its superintendent of streets, was an oral one, and the case as presented stands solely on the testimony introduced on the part of the plaintiff, and that testimony tends to show that in respect to the driving of the team the defendant committed nothing to the city or to its superintendent. On the testimony as to the contract, if the driver's carelessness resulted in injury to the plaintiff the doctrine of *respondeat superior* fastens liability upon the defendant, since the negligent wrong-doing inhered in a thing in respect to which the relation of master and servant between him and the driver had never been suspended.

In doing an act one cannot be the servant of both a general master and a temporary master. But he may at the same time be the servant of his general master in the doing of certain acts, and the servant of a temporary master in doing certain other acts.

If the contract had been such that Lavalley might have put a driver of his own choosing in charge of the team and have put

the driver furnished at some other work the defendant would be held to have relinquished the rights of a master and to have been freed from responsibilities as such in all respects. Such a contract, however, the evidence does not tend to show. Cases in point here are the following: *Huff* v. *Ford,* 126 Mass. 24, 30 Am. Rep. 645; *Reagan* v. *Casey,* 160 Mass. 374, 36 N. E. 58; *Joslyn* v. *Grand Rapids Ice Co.,* 50 Mich. 516, 45 Am. Rep. 54.

It should be observed that in the American Reports the head-note of the case last cited is absolutely wrong. The mistake was doubtless due to the fact that the case was reversed on a ground omitted from the report. The mistake is unfortunately carried forward in Rapalje's Digest of the American Decisions and the American Reports.

*Jones* v. *Corporation of Liverpool,* 14 Q. B. Div. 890, is in point, and contains a satisfactory review of earlier decisions in England.

In *Delory* v. *Blodgett,* 185 Mass. 126, 69 N. E. 1078, it is well said with reference to the hiring of a team and driver that "the circumstances are often such that, while the driver is the servant of the person to whom the team is furnished in reference to the question what he shall do or where he shall go, there is an implication that, as to the particulars of the management of the horses he is the servant of his general employer."

Under the arrangement which evidence here tended to show, if Charles Trudo negligently started up the team in the manner complained of, he was, in doing so, the agent of the defendant, Andrew Trudo, the owner of the team.

In considering the question of negligence on the part of the defendant and that of freedom from contributory negligence on the part of the plaintiff,—the further questions raised by the motion for a verdict,—the evidence is to be viewed in the light most favorable to the plaintiff. The plaintiff in one place testified that he was thrown out of the wagon by the jumping of the horses, that the driver dropped his shovel and spoke to the horses, whereupon the horses jumped. The plaintiff in this connection testified that he could not further remember. The evidence tended to show that the plaintiff at this time was at the hind end of the wagon with one foot on a wheel and the other on the end board or elsewhere, so as to give him a clear chance to scrape out the gravel. From a review of the whole evidence, and consider-

ing the character of the business that was doing, we think reasonable men might fairly differ as to whether or not the driver was guilty of negligence and as to whether or not the plaintiff was free from contributory negligence, and that so these questions were for the jury. How a jury should decide these questions it is not for us to intimate, and, lest we should seem to do so we refrain from further reference to the evidence.

The direction of a verdict for the defendant was erroneous.

*Judgment reversed and cause remanded.*