DAVID J. WILBUR

*vs.*

FORGIONE AND ROMANO COMPANY AND TYSON CONSTRUCTION
COMPANY, Trustee.

Cumberland.     Opinion December 4, 1912.

*Accident.     Agents.     Contractors.     Contract.     Due.     Duties.     Care.*
*Employer.     Express Direction.     General Employment.     Interference.*
*Liability.     Management.     Master.     Negligence.     Servant.*

In July, 1911, the Tyson Construction Company were the general contractors
in erecting an addition to the store of Porteous, Mitchell & Braun Com-
pany on Congress Street in the City of Portland and in extending the
rear of the store to Free Street. The work of making the necessary
excavation was sublet to the defendant. The shoring of the adjacent
buildings was sublet to the Isaac Blair Company and the plaintiff was
one of the Blair Company employees.

On the day of the accident, the plaintiff, in the course of his employment,
was working upon a ladder at a height of about twenty-eight feet from
the ground, the bottom of the ladder resting in the excavation on the Free
Street lot and the top against the wall or chimney of an adjoining house.
A team consisting of a pair of horses and a dump cart, loaded with rock
on its way out from the excavation, came in contact with this ladder,
throwing the plaintiff to the ground. This team was owned by the Cash
Fuel Company, and with its driver, Marston, had been let by the Cash
Fuel Company to the defendant to assist in the removal of rock. It was
one of several employed in the same work, one being owned by the
defendant, two by the Cash Fuel Company, and the others by various
other persons or concerns.

*Held:*

1. That the proximate cause of the accident was the manner in which the
   team was driven and not a projecting rock in the bottom of the excava-
   tion.
2. That the driver, Marston, in the particular act which caused the injury,
   was the servant of his employer and original master, the Cash Fuel
   Company, and not of the defendant to whom the team had been furnished.

3. That in the absence of any contract to the contrary or of any interference on the part of the person to whom the team had been let, the driver in the ordinary handling of the team remains the servant of his original master who was responsible for his selection and retention.

4. That this principle of law applies not only to persons carrying on a general livery or teaming business but to those who are engaged in a different occupation yet occasionally or in a single instance let their teams with drivers to another for the performance of certain work.

This is an action on the case in which the plaintiff seeks to recover damages for personal injuries which were occasioned by being thrown from a ladder upon which he was standing and working in the course of his employment. While so employed, a team consisting of a pair of horses and a dump cart loaded with rocks came in contact with the ladder upon which plaintiff was standing throwing him to the ground, a distance of twenty-eight feet, causing the injuries complained of. This team was owned by the Cash Fuel Company, and, at the time of accident, with its driver was let to the defendant. At the conclusion of the evidence, the case was reported to the Law Court for determination upon so much of the evidence as is legally admissible on the question of liability only. If, in the judgment of the Law Court, there is sufficient evidence to establish the liability of the defendant, the case is to stand for the assessment of damages by a commission of three to be appointed by the Court.

The case is stated in the opinion.

*Simonds, Snow,* and *Cook & Hutchinson,* for plaintiff.

*Arthur Chapman, Foster & Foster, Eaton,* and *Keene & Gardner,* for Trustee.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, JJ.

CORNISH, J. On report, with the stipulation that if in the opinion of the Law Court, there is sufficient evidence to establish the liability of the defendant the case is to be remanded for assessment of damages by a commission of three to be appointed by the Court.

The conceded facts are these. In July, 1911, the Tyson Construction Company were the general contractors in erecting an addition to the store of Porteous, Mitchell and Braun Company on Congress Street in the City of Portland and in extending the rear of the store to Free Street. The work of making the necessary excavation was sublet to the defendant. The shoring of the adjacent buildings was sublet to the Isaac Blair Company and the plaintiff was one of the Blair Company employes.

On the day of the accident, the plaintiff, in the course of his employment, was working upon a ladder at a height of about twenty-eight feet from the ground, the bottom of the ladder resting in the excavation on the Free Street lot and the top against the wall or chimney of an adjoining house. A team consisting of a pair of horses and a dump cart, loaded with rock, on its way out from the excavation, came in contact with this ladder throwing the plaintiff to the ground. This team was owned by the Cash Fuel Company, and with its driver, Marston, had been let by the Cash Fuel Company to the defendant to assist in the removal of rock. It was one of several employed in the same work, one being owned by the defendant, two by the Cash Fuel Company, and the others by various other persons or concerns.

The Cash Fuel Company was engaged in the sale of coal and wood, but as there was little for its teams to do at that season, it entered into an agreement with the defendant whereby the defendant was to pay it the sum of five dollars per day for the use of each team and driver as long as the defendant saw fit to employ them. The general manager of the Cash Fuel Company, a witness for the plaintiff, on being asked what arrangement he made with the defendant replied, "To hire two teams to him with dump carts, two horses and a man; he was to pay for the use of them $5 a day." On being asked what instructions he gave the drivers, he replied that he told them to report to Forgione and to tell him whose teams they were, and where they came from, but he had nothing to say as to what the teams should do after arrival. It was a typical case of letting a team with driver for special work. The Fuel Company selected, hired and paid the drivers for its teams and with that the defendant had nothing to do. If the defendant was not satisfied with a driver it could doubtless have sent back the team and driver but could not have substituted a driver of its own selection.

This being the state of facts, the plaintiff rests his contention upon one of two propositions. First that the defendant was negligent in ordering the team in question to be loaded and driven in such close proximity to the ladder as to cause the accident; or second, that Marston, the driver of the team was at the time in the performance of the defendant's business as its servant and his negligence was in law the defendant's negligence.

The first step to be taken in the solution of this problem is to ascertain what was the proximate cause of the accident. That is a question of fact. It is undisputed that this team had been loading with rocks in the rear of the Free Street excavation, with the horses' heads pointed toward Congress Street. On the way out it passed the ladder on which the plaintiff stood. The plaintiff claimed that the rear end of the cart was at an elevation of two or three feet while being loaded, the rear wheels being trigged. That when the cart was full, the trig was removed and the driver started on his way; that as he was nearly abreast the ladder the left forward wheel struck a solid projecting rock about the size of a Derby hat causing the pole and the yoke to swerve toward the left and strike the ladder. The burden was upon the plaintiff to establish this claim by a preponderance of the evidence. This we think he failed to do, but on the contrary the fair conclusion to be reached from all the evidence in the case, is that no projecting rock caused the accident, but when the cart was full, the driver in leaping upon the seat and gathering up the reins in some way, pulled on the wrong rein, turned the horses toward the left and thereby came in contact with the ladder. It would be profitless to discuss in detail the evidence leading to this conclusion. It is sufficient to state the conclusion itself. The direct and immediate cause therefore was the manner in which the team was handled by the driver and not a condition of the ground in the excavated cellar.

It is not necessary to decide in this action whether under all the circumstances of the case, the kind of work that was going on and the rough place in which it was necessarily performed, the driver was or not in the exercise of due care, but assuming that his act was a negligent one, was the defendant legally responsible for that act? That depends upon whether the driver was, at the moment

of the injury to the plaintiff, and in the particular work he was then engaged upon, the servant of the defendant, the general contractor, or of the Cash Fuel Company, his immediate employer.

Under the long line of decisions both in this country and England the Court is of the opinion that he was not at the time the servant of the defendant.

It is true that a person, admittedly in the general employment of one person may be loaned or hired to another in such a way as to become the servant of the other for the time being and in a particular transaction, with all the legal consequences of the new relation. *Wyman* v. *Berry*, 106 Maine, 43. But, as was stated by Chief Justice Holmes in *Driscoll* v. *Towle*, 181 Mass., 416, "The mere fact that a servant is sent to do work pointed out to him by a person who has made a bargain with his master does not make him that person's servant. More than that is necessary to take him out of the relation established by the only contract which he has made and to make him a voluntary subject of a new sovereign— as the master sometimes was called in the old books."

We must therefore determine whether in the particular act which caused the injury in this case namely the handling of the team, the driver was the servant of his original master, the Cash Fuel Company, or of the person to whom the team had been furnished, namely the defendant, the general contractor.

The authorities give but one answer to this question. They hold that in the absence of a special contract to the contrary, or of interference he remains the servant of his original master. The reason for this is apparent. Take the case at bar. The Cash Fuel Company hired whom it pleased to care for, manage and drive its teams. It paid them and discharged them. With their selection, payment and discharge the defendant had nothing whatever to do and it was no part of the duty of the defendant to determine upon the fitness or unfitness of such drivers. It took the teams as manned and furnished, while the responsibility for the proper handling of the teams in the absence of any contract to the contrary or of any express direction of the defendant, still remained upon the owner of the team. It is doubtless true that if the defendant in the case at bar had given directions to Marston to drive against the plaintiffs ladder and he had obeyed, the defendant would have been liable. In such

case the defendant would have assumed to interfere with the general employment of the driver and must therefore be responsible for the result of his own acts. But so long as the directions given by the defendant pertained to the general progress of the work, as the places from which the rock was to be taken and those to which it was to be carried and dumped, leaving the management of the team in doing that work still in the hands of the driver, that driver remained the servant of the party who hired and paid him for that particular kind of labor, presumably with the knowledge of his experience and skill. That was the situation here. It was the usual contract of hiring a team with driver, with no special limitations. So far as the evidence shows the defendant in a general way sent the teams to different parts of the excavation for their loads and gave orders as to the places where the loads should be dumped, but the evidence fails to prove that the defendant controlled or directed the driver in the management and handling of the team at any point in the work. While driving out of the excavation the driver remained the servant of the Cash Fuel Company, and that Company was responsible for his acts the same as on Congress Street on its way to or from the dumping ground.

In the absence of express contract, the law leaves the responsibility for the acts of the servant upon the person who was responsible for his selection and retention. "The health and safety of the horses, and the protection of the whole team by careful management, are of so much importance to the owner, that in the absence of an express contract, he will not be presumed to have given up their management to the hirer when he has sent his own servant for the special purpose of retaining this management," is the language of Chief Justice Knowlton in *Shepard* v. *Jacobs,* 204 Mass., 110.

Stress is laid upon the fact that the driver obeyed the orders of the defendant's foreman as to where the team should be loaded and the signals or directions of the defendant's employes as to when the team should be started, but that is not sufficient to show there has been a change of masters so far as the handling of the team is concerned. The order did not apply to the handling of the team, and the signals were more in the nature of information than of orders, and obedience to them showed coöperation in one extensive

work rather than subordination to another employer. *Standard Oil Co.* v. *Anderson,* 212 U. S., 215-226. The authorities are abundant; only a few need be referred to.

In *Jones* v. *Corporation of Liverpool,* L. R., 14, 2. B. Div., 890, the defendant contracted with one D. to supply by the day a driver and horse to drive and draw a watering cart belonging to the defendant. The defendant's inspector gave general direction as to what streets should be watered. In an action to recover damages for injuries sustained by a third person through negligent conduct of the driver while in charge of the team, it was held that the hirer was not liable. This decision follows the leading English cases of *Laugher* v. *Pointer,* 5 Barn & Cr., 560; *Smith* v. *Lawrence,* 2 Man. & Ry., 1, and *Quarman* v. *Burnett,* 6 Mees. & W., 497.

In *Higham* v. *Waterman Co.,* 32 R. I., 578, a truckman let his truck and driver to haul lumber at a certain price per hour; held that the driver continued to be the servant of the truckman in all matters pertaining to the performance of the contract unless by special arrangement he was placed directly under the control of the hirer or by the hirer's interference he makes the driver his servant as to the particular matter with which he interferes.

In *Morris* v. *Trudo,* 83 Vt., 44, the Superintendent of Streets of the City of Vergennes hired of the defendant a double team with driver. By the terms of the contract the driver was to do with the team whatever work he was set to do by the superintendent, whether moving stones, or using a scraper, or handling gravel. In the hauling of the gravel the superintendent directed where it should be taken from, where it should be unloaded and how it should be placed. The plaintiff was assisting the driver to unload, when the horses either started suddenly or were started by the driver, and the plaintiff, who was at the rear end of the wagon body, was thrown to the ground and injured. Suit was brought against the original employer and the court in the course of the opinion said:

"The precise question is whether or not, though the team and driver had been temporarily hired out by the defendant, the driver in the specific detail of managing or handling the team, remained the servant of the defendant of whom the team was hired. . . . One to whom the servant of another is temporarily lent or hired,

has for the time being the responsibility of a master in so far, and only in so far as he may exercise the authority of a master. The testimony tends to show that in respect to the driving of the team the defendant committed nothing to the city or its superintendent. . . . The doctrine of *respondeat superior* fastens liability upon the defendant, since the negligent wrong doing inhered in a thing in respect to which the relation of master and servant between him and the driver had never been suspended. . . . If the contract had been such that Lavelley (the superintendent) might have put a driver of his own choosing in charge of the team, and have put the driver furnished at some other work, the defendant would be held to have relinquished the right of a master and to have been freed from responsibilities as such in all respects. Such a contract, however, the evidence does not show."

This language applies with equal force to the case at bar, the facts being essentially similar.

The Supreme Court of Massachusetts has affirmed and reaffirmed the same doctrine in the following cases among others:

In *Huff* v. *Ford,* 126 Mass., 24, where a horse and wagon were let by the day by a contractor to the city of Boston to be used in the work of paving a street; in *Reagan* v. *Casey,* 160 Mass., 374, where the owner let a double team and driver to the City of Boston for work upon a sewer extension, under the general supervision of the foreman who had the right to direct where the teams should back up for their load and the place where they should be unloaded; In *Driscoll* v. *Towle,* 181 Mass., 416, where the team with driver was let to an Electric Lighting Company to be employed in general construction work; in *Shepard* v. *Jacobs,* 204 Mass., 110, which involved the letting of an automobile with chauffeur; and in *Hussey* v. *Franey,* 205 Mass., 413, involving the letting of a hack with driver.

It is unnecessary to multiply the citation of authorities which are numerous and uniform.

The very recent case of *Ireland* v. *Clark,* 109 Maine, 239, 83, At Rep., 667, involved the question between the servant and master, and the rights of no third person were affected. But the principle now at issue was there under discussion and many of the cases above referred to were cited with approval. That case is an authority in point. See also *Ames* v. *Jordan,* 71 Maine, 540.

The plaintiff seeks to escape the force of these decisions by distinguishing between livery stable keepers, truckmen and persons carrying on a general livery or teaming business and who, he claims, are therefore in a sense common carriers, and those persons or corporations who, like the Cash Fuel Company, are engaged in a different occupation but in a single instance, or even occasionally, let their teams with drivers for the performance of certain work. This distinction, however, is not made in the cases and we are unable to perceive the logical line of cleavage. In every case, no matter what the general business of the owner may be, the rights and liabilities of the parties depend upon the contract under which the teams are let. This and this alone is the test, and whether one of the parties makes the contract as a part of his regular occupation, or outside it and in a special instance, should make no difference. The question is, who was the master at the particular time and in the particular transaction, the owner or the contractor, not whether the owner is accustomed to make these contracts. Otherwise two teams might be working side by side, and under the same general arrangement between the parties, and the contractor be held liable for the negligent acts of one driver in the handling of his team and not for those of the other under precisely the same circumstances. It would not seem that liability could shift on such artificial grounds. It rests upon contract and not upon occupation.

Our conclusion, therefore, is that the injury in question was caused by the driver in the management of his team and that in that phase of his work he was not the servant of the defendant.

The entry must therefore be,

*Judgment for defendant.*