RICHARDS *v.* CONSOLIDATED LIGHTING COMPANY.

May Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS and TAYLOR, JJ.

Opinion filed November 10, 1916.

*Master and Servant—Independent Contractor—Safe Working
Place—Duty of Owner of Premises Toward Servant of Con-
tractor—Liability of Owner for Negligence of Independent
Contractor—Work in Its Nature Calculated to Cause In-
jury to Others— Care of a Prudent Man—Dangers Reason-
ably to be Anticipated—Specifying Result of Work.*

When one loans or hires his servant to another, the latter assumes
the responsibility of a master so far, and only so far, as he may
exercise the authority of a master.

A master is one who not only prescribes what the result shall be, but
directs or may direct the means and methods of doing the work.

One who specifies the result, but leaves to the person employed to
accomplish it the means and methods by which it is to be attained,
thereby creates the relation of contractor and contractee, and
not that of master and servant; and the fact that the employer
has the right to inspect and supervise the work so far as neces-
sary to see that it conforms to the plan does not affect the question.

While the general rule is that an owner does not owe to a person
employed on his premises in the service of an independent con-
tractor the duty to furnish a safe working place, yet such em-
ployee is on the premises by his invitation, express or implied, and
in cases where the owner retains control of the premises he
must use reasonable care to see that they are safe.

It is the general rule that an owner is not responsible for the
negligence of an independent contractor or his servant resulting
in injuries to third persons, but that redress must be sought of
the offending servant or contractor; but if the work contracted
for is unlawful, or such as to create a nuisance, or is intrin-
sically dangerous, or in its nature calculated to cause injury
to others unless precautions are taken, or if the owner negligently
employs an incompetent or untrustworthy contractor, or if he
reserves in the contract general control over the contractor or his

servants, or over the manner of doing the work, or if he interferes with or assumes control of the work during its progress, or if he is under statutory duty to see that the work is properly done, he will be responsible for the resultant injury.

It is not necessary in order to render the owner liable for the negligence of an independent contractor, because the work is in its nature calculated to cause injury to others, that the injury should be a necessary result of the work; neither is it enough that the work may result in injury; the work must be such that injury will probably result unless special precautions are taken.

The use of a team to remove ashes from a restricted area, in which an independent contractor was constructing a coal conveyor for the defendant, in the course of which work the plaintiff, who was a workman employed by the contractor, was injured by the team, was not work of such a character as to make injury probable, unless special precautions were taken.

Where the plaintiff was employed by a contractor who was engaged by the defendant to build a coal conveyor at its electric light plant, and while standing upon a ladder, engaged upon his work, was knocked down and injured by a team in the employ of a corporation with which the defendant had arranged for the removal of certain ashes from the premises upon which the work was going on, *held*, the plaintiff was the servant of the contractor, and not of the defendant; and the driver of the team was not the servant of the defendant; and, the work not being of such a character as to make the injury probable, unless special precautions were taken, the defendant was not required to anticipate the conditions which resulted in the accident, and was not liable.

The care of a prudent man requires one to guard against dangers reasonably to be anticipated, but not others.

*Held*, under the circumstances the defendant was not required to anticipate the condition which resulted in the accident to the plaintiff.

Where the defendant's representative gave the plaintiff, who was a workman in the employ of a contractor, a plan of a coal conveyor, and said "We will leave it to you to go and put it on", this was merely specifying the result and not directing the methods and did not make the plaintiff the servant of the defendant.

CASE FOR NEGLIGENCE. Plea, the general issue. Trial by jury at the September Term, 1915, Washington County, *Water-*

*man,* J., presiding.   Verdict directed, *pro forma,* for the defendant.   The plaintiff excepted.   The opinion states the case.

*John W. Gordon* and *H. W. Scott* for the plaintiff.

*Erwin M. Harvey* and *Fred E. Gleason* for the defendant.

Powers, J.   The defendant engaged Gitchell, a contractor, to build a coal conveyor at its electric plant, according to certain plans and prints which it furnished him.   Gitchell sent several of his men, including the plaintiff, a carpenter, to do the work. While they were putting on the roof and the plaintiff was standing on a ladder nailing the strips, a team, belonging to one Hayden and driven by one Scales, hit the ladder and knocked it out from under the plaintiff, causing him to fall a distance of ten or twelve feet and to suffer the personal injuries for which the suit is brought.   A verdict was ordered for the defendant below,—an exception to which presents the only question here argued.

The conveyor on which the plaintiff was at work, was attached to the north side of the defendant's building and extended northerly about 35 feet.   In front of it, the earth had been excavated in such a way as to leave an area about 34 by 37 feet.   In this area, the defendant was accustomed to dump ashes and waste from the plant, and the only way this refuse could be removed was over a driveway which ran westerly to the highway.   The defendant had an arrangement with the Barre & Montpelier Power & Traction Company whereby the latter was to remove these ashes as the defendant's necessities required or at the Traction Company's convenience.   The Traction Company arranged with Hayden to do this work.   At the time here in question, a considerable quantity of ashes had accumulated in the area, and the Traction Company ordered the ashes removed and Scales was proceeding to remove them accordingly when the team hit the ladder as stated.   It did not appear at the trial that the defendant gave any special order about removing the ashes on that particular day.   Nor did it appear that Scales was an incompetent driver, or the team an unsafe one.   It did appear that the area was rather of a difficult place in which to handle a team, and that in order to turn the

team around in it, as had to be done in order to get out with the ashes, it was necessary to cramp and back twice.

The plaintiff maintains that the relation between the defendant and the plaintiff was that of master and servant, and invokes the familiar safe-place rule, insisting that the defendant was guilty of actionable negligence in allowing the team to enter the area, thereby increasing the hazards of the plaintiff's position.

That the plaintiff was the defendant's servant we cannot agree. The question involved has received the recent attention of this Court in *Morris* v. *Trudo,* 83 Vt. 44, 74 Atl. 387, 25 L. R. A. (N. S.) 33. It was there held, in accordance with our previous decisions, that when one loans or hires his servant to another, the latter assumes the responsibilities of a master so far, and only so far, as he may exercise the authority of a master. But a master is one who not only prescribes what the result shall be but directs or may direct, the means and methods of doing the work. *Bailey* v. *Troy & Boston R. R. Co.,* 57 Vt. 252, 52 Am. Rep. 129.

On the other hand, one who specifies the result, but leaves to the person employed to accomplish it the means and methods by which it is to be attained, thereby creates the relation of contractor and contractee, and not that of master and servant. *Id.*

*Hoadley* v. *International Paper Co.,* 72 Vt. 79, 47 Atl. 169, is in point. There Spring was a builder and contractor for whom the decedent worked. The defendant had occasion to have certain repairs made on its mill and arranged with Spring to do the work. Spring sent his men, including the decedent, to do what was necessary. These men were not employed, paid, governed or directed by the defendant or any one in its employ. "Standing thus," says the court, "the question of fellow servant is not involved, as the decedent was the servant of Spring and not of the defendant."

The rule above stated is everywhere recognized and approved. Among the recent cases affirming it is *Wilbur* v. *Forgione & Romano Co.,* 109 Me. 521, 85 Atl. 48, which, on account of similarity of facts, may here be referred to. In that case, the owners of a store in Portland let the contract to the Tyson Construction Company to erect an addition to their building. The Construction Company sublet the excavating to

the defendant, and the shoring of adjacent buildings to the Isaac Blair Company. The plaintiff was an employee of the Blair Company, and when injured was at work on a ladder, the bottom of which rested in the excavation being made by the defendant. A team consisting of a pair of horses and a dump cart on its way out of the excavation with a load of rock hit the ladder and threw the plaintiff to the ground causing the injuries sued for. This team did not belong to the defendant but was owned by the Cash Fuel Company, and with its driver, Marston, was hired out to the defendant at a stipulated price per day. It was held that Marston was not the servant of the defendant and that the latter was not liable for his negligence.

Applying the rule to the case before us, it is obvious that the plaintiff was the servant of Gitchell and not of the defendant. The defendant told him what to do,—that is to say, to build the carrier according to the plans—but the methods, means and details of the work were in the hands of Gitchell. The fact that the owner has the right to inspect and supervise the work so far as necessary to see that it conforms to the plan does not affect the question. 1 Thomp. Neg. §660.

It is equally apparent that the rule makes Scales the servant of Hayden or the Traction Company and not of the defendant. The latter had no authority over him so far as the care and management of the team were concerned.

It does not necessarily follow, however, that the defendant owed the plaintiff no duty of active care. While the general rule is that an owner does not owe to a person employed on his premises in the service of an independent contractor the duty to furnish a safe working place, yet such an employee is on the premises by his invitation, express or implied, and in cases where the owner retains control of the premises, he must use reasonable care to see that they are safe. *Kelleher* v. *Schmitt, etc., Mfg. Co.,* 122 Iowa 635, 98 N. W. 482; *Stevens* v. *United Gas, etc., Co.,* 73 N. H. 159, 60 Atl. 848, 70 L. R. A. 119; *Sloss-Sheffield, etc., Co.* v. *Hubbard,* (Ala. App.) 68 South. 571; *Bennett* v. *Louisville & N. R. R. Co.,* 12 Otto (U. S.) 577, 26 L. ed. 236; *Samuelson* v. *Cleveland Iron Mining Co.,* 49 Mich. 164, 13 N. W. 499, 43 Am. Rep. 456.

The duty of a landowner toward an invitee was expressly recognized in *Pierce* v. *Whitcomb,* 48 Vt. 127, 21 Am. Rep. 120, and again in *Bottum's Admr.* v. *Hawks,* 84 Vt. 370, 79 Atl. 858,

35 L. R. A. (N. S.) 440, Ann. Cas. 1913 A, 1025, and the very point now under discussion is covered by *Hoadley* v. *International Paper Co.,* 72 Vt. 79, 47 Atl. 169, for it is therein in effect held that the owner was liable for negligence on its part that increased the dangers to the contractor's servant beyond those ordinarily attending the work.

But the negligence here was not that of the defendant or its servants or agents. The mere fact that the defendant allowed the team to enter the area does not show negligence on its part. If there was negligence anywhere it was the negligence of Scales, the driver, who, as we have seen, was not the defendant's servant. The general rule is that an owner is not responsible for the negligence of an independent contractor or his servant resulting in injuries to third persons, but that redress must be sought of the offending servant or the contractor. This rule, however, is subject to several well established exceptions. If the work contracted for is unlawful, or such as to create a nuisance, (*Bailey* v. *Troy & Boston R. R. Co.,* 57 Vt. 252, 52 Am. Rep. 129), or is intrinsically dangerous, or in its nature calculated to cause injury to others unless precautions are taken, or if the owner negligently employs an incompetent or untrustworthy contractor, of if he reserves in his contract general control over the contractor or his servants, or over the manner of doing the work, or if he interferes with or assumes control of the work during its progress, or if he is under statutory duty to see that the work is properly done, he will be responsible for the resultant injury (*Douglas* v. *Peck & Lines Co.,* 89 Conn. 622, 95 Atl. 22). The only one of these exceptions which the plaintiff attempts to bring our case within is the one referring to work calculated to cause injury to others. It is not necessary, in order to bring a case within this exception, that the injury should be a necessary result of the work; on the other hand, it is not enough to bring a case within it that the work *may* result in injury. The work must be such that it will probably so result unless special precautions are taken. *Thompson* v. *Lowell, etc., St. R. Co.,* 170 Mass. 577, 49 N. E. 913, 40 L. R. A. 345, 64 Am. St. Rep. 323; *Bibb* v. *Norfolk etc., R. Co.,* 87 Va. 711, 14 S. E. 163; *Inglis* v. *Millersburgh Driving Ass'n,* 169 Mich. 311, 136 N. W. 443, Ann. Cas. 1913 D, 1174; *Drennan* v. *Jordan,* 181 Ala. 570, 61 South. 938; *Weilbacher* v. *Putts Co.,* 123 Md. 249, 91 Atl. 343, Ann. Cas. 1916 C, 115.

The use of a team to remove the ashes from the area during the progress of the plaintiff's work might (and did) result in his injury, but it was not work of a character to make that result probable, and if the team had been properly handled that result would have been averted. The defendant was under no obligation to anticipate or guard against the conditions which conspired to bring about this accident, and the record discloses no ground of liability.

*Judgment affirmed.*

### On Motion for Re-argument.

After the foregoing opinion was read in court, counsel for the plaintiff, by our leave, filed a motion for re-argument, and have now, as have counsel for the defendant, filed a brief thereunder, agreeably to our practice.

We say in the opinion that the area was about 34 x 37 feet. This, it is claimed in support of the motion, is a mistake, and that there was evidence tending to show that it was materially smaller. The transcript bears out this claim. However, we took our statement from the plaintiff's own brief, on page 2 of which we found this statement: "This excavation measured lengthwise on the main building 34 feet, 6 inches, and parallel with the coal conveyer 37 feet, 6 inches." But we did not make the size of the area the controlling factor, or even a very important factor in our decision. The smaller the area, to be sure, the more difficult it would be to turn a team in it; and the greater the difficulties, the less likely it would be that anyone would undertake it with the plaintiff at work on the ladder. The case shows the approximate length of the team, but does not indicate its turning radius which would depend much upon the size of the front wheels,—whether they turned *under* the plank on which the seat rested or *against* it. So the difference in the size of the area would not alone change the result.

The plaintiff argues this fact that the area was even more restricted than we stated in the opinion so affected the chance of such an accident that we should hold that the one sued on was a probable result of allowing the team in there while the plaintiff was at work on the ladder. With this claim we have no occasion to disagree. If it was the part of a prudent

man to anticipate that this plaintiff would be at work on a ladder standing in the area and at the same time a man with a team would drive in there and attempt to turn around without warning the plaintiff, the argument might avail. But the defendant was not as a prudent man bound to anticipate either, much less both, of these conditions. The whole case shows that the defendant's business was expected to go along as usual. It knew that a roof was to go on to the carrier. How that roof was to be put on, whether by the use of ladders, or stagings built on poles, or stagings built on brackets, or swing stagings, was a question wholly for Gitchell or his workmen to decide. There is nothing in the record to indicate that the defendant's officers or representatives knew or in the circumstances ought to have known the method decided upon. Nor did the defendant have anything to do with the team coming that day. It did not order it or so far as shown know it was there. The care of a prudent man requires one to guard against dangers reasonably to be anticipated, but not others. *Wetherby's Admr.* v. *Twin State Gas Co.*, 83 Vt. 189, 75 Atl. 8, 25 L. R. A. (N. S.) 1220, 21 Ann. Cas. 1092. As we said in the opinion, this defendant was not required to anticipate the conditions which resulted in this accident.

The plaintiff says in his brief that the whole danger came from the cramped area and the instrumentalities for work that the defendant procured and authorized to be used. The record does not bear out this statement. The defendant did not furnish the ladder or authorize its use. It handed the plans to the plaintiff and told him to go ahead. Means and instrumentalities were left to him or his employee.

The plaintiff criticises our citation of *Wilbur* v. *Forgione & Romano Co.*, 109 Me. 521, 85 Atl. 48, and suggests that a "mere cursory glance at the case shows a vital difference between that case and the case at bar." Counsel wholly misapprehend the point of the citation. We cited the case, not on the main question of liability, but to the point that the plaintiff and Scales were not the defendant's servants. That it was correctly cited appears not only from an examination of it, but from the fact that it is predicated upon *Morris* v. *Trudo*, 83 Vt. 44, 74 Atl. 387, 25 L. R. A. (N. S.) 33, and other cases of like import. Our citation of the case was wholly superfluous as *Morris* v. *Trudo* was full authority on the question of agency, but it was accurate.

The plaintiff says we failed to give force to the evidence that the defendant expressly ordered the plaintiff to do this particular work. We failed to give force to this evidence because it was entitled to no force. As we have seen all there was to this evidence was this: The defendant's representative gave the plaintiff a plan of the carrier and told him to build it,— to use the plaintiff's own language, "we first looked at the plan, and then they (defendant's representatives) said 'we will leave it to you to go and put it on.'" Plainly, this was merely specifying the result, and not directing the methods.

*Re-hearing denied.*