WILFRED LE BLANC *v.* NYE MOTOR COMPANY ET AL.

May Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and WILLCOX, JJ.

Opinion filed October 1, 1929.

196

*Deane C. Davis* for the claimant.

*Erwin M. Harvey* for the defendants.

198

SLACK, J.   The commissioner, on facts found and stated by him, held that claimant was an employee of the defendant Motor Company at the time of the accident, that his employment was not purely casual, and that the accident arose in the course of such employment, from which holdings the defendants appealed.

The commissioner further held, on the facts so found and stated by him, that such accident did not arise out of such employment, and denied compensation, from which the claimant appealed.

If claimant was not an employee of the Motor Company, but an independent contractor as claimed by defendants, or if his employment was purely casual, the commissioner was without jurisdiction, and any order made by him was void. *Packett* v. *Moretown Creamery Co.*, 91 Vt. 97, 99 Atl. 638, L. R. A. 1918F, 173; *Chamberlain* v. *Central Vermont Ry. Co.*, 100 Vt. 284, 137 Atl. 326.   So we first consider these questions.

The material findings are these:   The claimant began work for the Motor Company in April, 1925, under a parol contract by the terms of which he was to sell both new and used automobiles on a commission of 5 per cent. on sales of the former and 8 per cent. on sales of the latter.   He was a stonecutter, and it was understood that he could work at his trade during the usual working hours, and that he would work under his arrangement with the Motor Company only "after hours," Sundays, and holidays.   The Motor Company was to furnish the cars to be sold and gas and oil necessary for their demonstration.   The claimant could show such cars to whoever he could interest, and could demonstrate them on any road he chose, and at any time which suited his own and his customers' convenience.   He was

required to submit all proposed transactions (except perhaps cash sales) to the Motor Company for its approval as to allowance for old cars taken in trade, the credit of prospects, and the security they offered on time contracts. The Motor Company exercised no control over claimant's "activities" other than such as related to the matters last mentioned. On June 13, 1926, "while so employed" he was demonstrating a car on a highway where there was a one-way bridge. As he approached this bridge he saw a car coming from the opposite direction and stopped on the right-hand side of the road to allow that car to cross the bridge first. It crossed the bridge at a rapid speed and collided with his car, causing the injuries for which compensation is sought.

■■ On these findings it cannot be said that the commissioner erred in holding that claimant was an employee of the Motor Company. The master test in determining whether one who is performing work for another. is a servant or an independent contractor is the right of the latter to control the work, to direct the means and methods by which it shall be done. *Kelley's Dependents* v. *Hoosac Lumber Co.*, 95 Vt. 50, 113 Atl. 818; *Bailey* v. *Troy & Boston R. R. Co.*, 57 Vt. 252, 52 A. R. 129; *Richards* v. *Consolidated Lighting Co.*, 90 Vt. 552, 99 Atl. 241. But it is said in the former case, and cases there cited, that it is the *right* to control the work that determines, actual interference being unnecessary. The Motor Company, as we have seen, had complete control respecting the terms of all sales, unless, perhaps, sales for cash. While it appears that it exercised no control over claimant's work in other particulars, it does not appear that it did not have the *right* to do so. Of course, if the contract was silent as to where claimant should demonstrate cars he offered for sale, he could do that wherever he saw fit unless and until the Motor Company directed otherwise; which it did not do. Such appears to have been the real situation here, at least the findings are fairly susceptible of that construction. Then, too, for aught that appears, the contract could be terminated at the pleasure of either party, a circumstance which tends to refute defendants' claim. On this issue the findings made a *prima facie* case of ordinary service, which defendants failed to overcome by counter findings necessary to support their contention. As to the burden of evidence on this issue see

*Kelley's Dependents* v. *Hoosac Lumber Co., supra,* at page 54 of 95 Vt., 113 Atl. 818.

The second holding of the commissioner which is challenged by defendants' appeal was erroneous. Whether employment is "purely casual" within the meaning of our statute is to be determined by the contract for service. *Chamberlain* v. *Central Vermont Ry. Co., supra.* See also Gaynor's Case, 217 Mass. 86, 104 N. E. 339, L. R. A. 1916A, 363; *Aurora Brewing Co.* v. *Industrial Board,* 277 Ill. 142, 115 N. E. 207; *Western Union Tel. Co.* v. *Hickman* (C. C. A.), 248 Fed. 889; *Callihan* v. *Montgomery,* 272 Pa. 56, 115 Atl. 889. The word "casual" is in common use. Its ordinary meaning, according to the lexicographers, is something that comes without regularity and is occasional and incidental. It is said in Gaynor's Case, *supra,* that its meaning may be more clearly understood by referring to its antonyms which are "regularity," "systematic," "periodic," and "certain."

So far as appears, the contract before us did not require the claimant to work at any certain or regular time. It simply appears that what he did he would do after hours, Sundays, and holidays. This is all we know concerning the time or duration of his services. Whether he was to and did work certain hours each day, each week, or each month the record does not disclose. It does appear that so far as the demonstration of cars was concerned he could do that at his own and his customers' convenience; and the nature of the contract is such that, the contrary not appearing, it will be assumed that his other activities were subject to his own convenience. If so, his employment was purely casual, since it was not regular, periodic, or certain. If it was otherwise, it was incumbent on him, in the circumstances, to prove it, because the findings as they stand do not make a *prima facie* case of ordinary service, but show merely an opportunity for claimant to devote such of his spare time as he saw fit, with no obligation to so use any of it, to the sale of cars. It is the uncertainty and irregularity of claimant's service under this contract, as it appears, and not the fact that what he might do would be done outside the hours he worked at his trade, that characterizes the nature of his employment. Nor does the fact that the accident occurred more than a year after the contract was entered into change the situation, since there is no finding respecting the regularity of his

services in the meantime. While it may be difficult in some instances to determine whether service is purely casual or otherwise, in order to entitle a claimant to any standing under our statute something more concerning the regularity and certainty of the service must appear than is disclosed in the instant case. ██ Since claimant's employment was purely casual, the commissioner was without jurisdiction to make the other rulings appealed from; therefore they are not considered.

*Order vacated and proceedings dismissed with costs. Let the result be certified to the commissioner of industries.*

---

WILFRED LeBLANC *v.* NYE MOTOR COMPANY ET AL.

May Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and WILLCOX. JJ

Opinion filed October 1, 1929.

*Deane C. Davis* for the claimant.

*Erwin M. Harvey* for the defendants.