PASQUALE PAPPILLO'S ADMX. *v.* RENE PRAIRIE.

January Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed February 7, 1933.

*J. A. McNamara* and *F. D. Foley* for the plaintiff.

*M. G. Leary* and *K. Paul Fennell* for the defendant.

POWERS, C. J.   The State Construction Co., Inc., was engaged in laying a cement pavement on a highway in the town of Colchester, under a contract with the State. The decedent, Pasquale Pappillo, was one of its employees. The defendant was engaged in the trucking business, and in response to a request from the

Construction Company he sent a truck and driver to work on the paving job by the hour. All there was to this contract between the Construction Company and the defendant, according to the testimony, was that the former asked if they could have a truck and driver and the latter replied that they could. But it is a fair inference from the record that the driver of the truck was to be under the direction of the Construction Company as to what he should draw, where he should get it, where he should deposit it, and, in short, as to what he should do to correlate his work to the general undertaking which the Construction Company was carrying on. But the evidence went no further. The defendant, alone, so far as shown, could control the driver in so far as the care, management, and operation of the truck was concerned. He hired the driver; he paid the driver; and he and no one else could discharge the driver, put him on another truck or at other work, or substitute another driver in his place. The Construction Company could lay off or discharge both truck and driver. But they could not put another driver on the truck or set the defendant's driver to other work.

In the progress of the paving undertaking it became necessary from time to time for the defendant's truck to haul "batches" of paving material. This work required the use of "batchboards" which raised the body of the truck so as to prevent the driver from seeing the road or objects behind the truck. When these were in place, a "batch," consisting of sand, stone, and cement in separate compartments of the truck body and in correct proportionate quantities, were hauled to the mixing machine. At the time of the accident here in question, the defendant's truck and six or eight others were made ready for batch drawing and entered upon that work. This is the way it was done: A power mixer and paver moved along the road as necessary, mixing and depositing the paving material in its proper place. The materials were brought to this machine by the trucks, each, in turn, taking a position between the side forms some distance ahead of the mixer; then, on signal, the truck was backed toward the mixer until it reached the proper location, and the contents were then dumped into the "skip" of the mixer, which by the power of the machine was raised so that the materials slid into the mixer. The truck then ran forward and away for another load. Another truck, almost immediately, took its position between the forms, backed up, and

deposited its load in the same way. And so the work went on without interruption or delay. When the batchboards were on, the only way the driver could see to guide his truck and keep from injuring the forms was by opening the left-hand door of the cab, and looking down to the ground and watching the left-hand form. By keeping the proper distance from that, he could guide his truck until signaled to stop.

The decedent was in his place between the skip and the backing truck. It was his job to keep the space between the side forms properly leveled. He did not see the defendant's truck as it backed toward him, the driver couldn't see him, and a warning shout from a fellow workman who saw his peril did not reach the decedent in time to save him. The truck hit him and inflicted injuries from which he died.

The evidence tended to show that Godin, the driver of this truck, had been told by the Construction Company's boss to back in slowly and sound his horn. The suit is by Pappillo's administratrix; the trial below was by jury; and at the close of the plaintiff's evidence, a verdict was ordered for the defendant, and the plaintiff excepted.

■ Was Godin, the driver, at the very time of the accident, the servant of the defendant? Strictly speaking the only question necessarily involved here is: Was there any evidence fairly and reasonably tending to show that he was; for if there was, it would send the case to the jury. *Quinby* v. *Estey,* 221 Mass. 56, 108 N. E. 908; *Sargent Paint Co.* v. *Petrovitzky,* 71 Ind. App. 353, 124 N. E. 881; see *Kelley's Dependents* v. *Hoosac Lumber Co.,* 95 Vt. at page 56, 113 Atl. 818.

■ The rule governing such cases in this jurisdiction has been stated and applied in a long line of decisions, and without material variation it is therein said that the master test is: Who has a right to control the offending servant in the performance of his work at the time in question? Various circumstances and things are for consideration, to be sure, in their bearing upon the question just stated, but when that question is answered, the investigation comes to an end. This idea runs through all of our cases. *Bailey* v. *Troy & Boston R. R. Co.,* 57 Vt. 252, 261, 52 A. R. 129; *Morris* v. *Trudo,* 83 Vt. 44, 47, 74 Atl. 387, 388, 25 L. R. A. (N. S.) 33; *Richards* v. *Consolidated Lighting Co.,* 90 Vt. 552, 555, 99 Atl. 241; *Kelley's Dependents* v. *Hoosac Lumber Co.,* 95 Vt. 50, 53, 113 Atl. 818; *LeBlanc* v. *Nye Motor Co.,* 102

Vt. 194, 199, 147 Atl. 265; *Jourdenais* v. *Hayden*, 104 Vt. 215, 216, 115 Atl. 664; *Rich* v. *Holmes et al.*, 104 Vt. 433, 160 Atl. 173, 174.

Of these cases *Morris* v. *Trudo* is directly in point. There the defendant's team and driver were hired out to work on a street job. By the terms of the contract, the hirer was clothed with just the authority over the driver that the Construction Company was here—he could direct the material that the team should haul, where to get it, and where to leave it. The plaintiff in that case was assisting in unloading a load of gravel, and was thrown off the wagon when the horses started without warning. It was held that the driver of the team was the servant of the owner, the defendant, since that relation had not been suspended by the contract under which he went to work on the street. "If the contract had been such," says *Haselton*, J., "that Lavally might have put a driver of his own choosing in charge of the team and have put the driver furnished at some other work, the defendant would be held to have relinquished the rights of a master, and to have been freed from responsibilities as such in all respects."

Many cases to the same effect, and some to the contrary of our rule, are to be found in the books, but the only one supporting us that we care to take the time to refer to is *Standard Oil Co.* v. *Anderson*, 212 U. S. 215, 53 L. ed. 480, 484, 486, 29 Sup. Ct. 252, 256, wherein it is made clear that the fact that the driver of this truck took his directions from the Construction Company in backing in with his load does not affect the question here involved. "But when," says *Moody*, J., in speaking for the court, "one large general work is undertaken by different persons doing distinct parts of the same undertaking, there must be cooperation and coordination, or there will be chaos. The giving of the signals under the circumstances of this case was not the giving of orders, but of information; and the obedience of those signals showed cooperation rather than subordination, and is not enough to show that there has been a change of masters." To the same effect see *Holmes*, C. J., in *Driscoll* v. *Towle*, 181 Mass. 416, 63 N. E. 922.

The case in hand is well within the authority of *Morris* v. *Trudo, supra,* and on the record, the negligence of Godin, if any, was the negligence of defendant since it "inhered in a

thing in respect to which the relation of master and servant between him and the driver had never been suspended''; that is to say, in the management and handling of the truck, which was all the time the defendant's business.

*Reversed, and remanded.*