WILLIS VONTRESS, APPELLEE, v. READY MIXED CONCRETE COMPANY, A CORPORATION, APPELLANT, IMPLEADED WITH PANE & COMPANY, INC., A CORPORATION, APPELLEE.

104 N. W. 2d 331

Filed July 15, 1960. No. 34801.

*Cassem, Tierney, Adams & Henatsch,* for appellant.

*Story, Pilcher & Howard* and *E. H. Stevens,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Douglas County. It involves an action brought by Willis Vontress against Ready Mixed Concrete Company, a corporation, for damages he suffered when one of defendant's cement mixer trucks was backed over his right foot. The jury returned a verdict for the plaintiff and defendant has perfected this appeal from the overruling of its motion for either a judgment notwithstanding the verdict or for a new trial.

Pane & Company, Inc., a corporation, plaintiff's employer, was made a party defendant to permit it to be reimbursed out of any recovery made by plaintiff for certain benefit payments it has made, or will make, under the provisions of the Nebraska workmen's com-

pensation laws because of the injuries plaintiff suffered. § 48-118, R. R. S. 1943.

For convenience we shall herein refer to appellant Ready Mixed Concrete Company as either appellant or Ready Mixed; to appellee Willis Vontress as either appellee or Vontress; to Robert F. Barnes, who was the driver of the cement mixer truck that backed over Vontress' right foot, as Barnes; and to Pane & Company, Inc., a corporation, as Pane.

Pane had entered into a contract to pave Oak Street in Omaha, Nebraska, at least between One Hundred Sixth and One Hundred Seventh Streets, and had entered into a contract with Ready Mixed to furnish concrete for the job. Pane had constructed forms on Oak Street, between One Hundred Sixth and One Hundred Seventh Streets, for that purpose and, on May 16, 1958, its employees, including Vontress, were engaged in finishing this part of the paving job, Ready Mixed furnishing the concrete, when the accident happened which resulted in Vontress' right foot being seriously injured.

Ready Mixed had a number of cement mixing machines stationed on trucks, to which we will herein refer as trucks. These trucks, loaded with mixed cement or wet concrete, would come to the intersection of Oak and One Hundred Eighth Streets, then back eastward on Oak Street to where the paving was being done, and there unload the concrete between the forms put up by Pane. One of these trucks, while being used to pull a strike-off bar, backed over Vontress' right foot. While the evidence as to how the accident happened is in conflict, it is sufficient to support a jury's finding that Barnes was negligent in backing the truck he was driving when he did and that his negligence, in doing so, was the proximate cause of the accident.

The principle question raised by this appeal is, is the evidence adduced sufficient to show, either as a matter of law or as an issue of fact for a jury, that Barnes was, at the time of the accident, a loaned or special employee

of Pane for the purpose of pulling the strick-off bar, and thus a fellow employee of Vontress, that issue having been properly raised by the amended answer of Ready Mixed and by its requested instructions? If he was, there can be no recovery by appellee herein under the factual situation disclosed by the evidence adduced. As stated in In re Estate of Bingaman, 155 Neb. 24, 50 N. W. 2d 523: "A person in the relationship of a fellow employee to another is not liable for negligent acts committed under the direction and control of the employer except for misfeasance or positive wrong."

By its instruction No. 6 the trial court, in effect, informed the jury that Barnes was not a loaned or special employee of Pane but was, in fact, at the time of the accident, acting within the scope and course of his employment by Ready Mixed and that Ready Mixed would be chargeable with and legally responsible for his negligence. The question of whether or not Barnes was, as a matter of fact, negligent in the operation of the truck he was driving and, if so, whether or not such negligence was a proximate cause of the accident was, by other instructions, properly submitted to the jury.

"A party to an action is entitled to have the jury instructed with reference to his theory of the case, when the pleadings present the theory as an issue and it is supported by competent evidence, whether requested to do so or not." Southwell v. DeBoer, 163 Neb. 646, 80 N. W. 2d 877. See, also, Welstead v. Ryan Constr. Co., 160 Neb. 87, 69 N. W. 2d 308.

The factual situation herein presented as to the use by Pane of Ready Mixed truck drivers to pull the strike-off bar, if and when requested to do so, is not in dispute. We said in Mansfield v. Andrew Murphy & Son, 139 Neb. 793, 298 N. W. 749: "In such case, whether the right of control, or want of it, existed, is ordinarily a question of fact for the jury; but where the pertinent facts pertaining to the contract and relationship of the persons involved are not in dispute, and but one rea-

sonable inference can be drawn therefrom, it is a question of law for the court." See, also, In re Estate of Bingaman, *supra;* Kessler v. Bates & Rogers Constr. Co., 155 Neb. 40, 50 N. W. 2d 553. In view thereof, the trial court was correct in passing on this issue as a matter of law. The question is, did it come to the correct conclusion?

It is of course true, as stated in Mansfield v. Andrew Murphy & Son, *supra,* that: "The fact that an employee is the general servant of one employer does not, as a matter of law, prevent him from becoming the particular servant of another, who may become liable for his acts." The court therein goes on to say: "The right of control, or want of it, determines if the relation of master and servant, at the particular time in question, existed between the employee and his general employer, or whether there had been a change in relationship and he had become, for the time being, a special employee of another person." See, also, Kessler v. Bates & Rogers Constr. Co., *supra;* Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480. As stated in Standard Oil Co. v. Anderson, *supra:* "One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation."

Vontress was an employee of Pane and, on May 16, 1958, he was working on the job of paving Oak Street. His duties on that job were to empty the cement from the trucks of Ready Mixed as they delivered it, doing so by means of a chute attached to the rear thereof, and to have one of the trucks pull the strike-off bar whenever it was necessary to have this done, asking the driver thereof to do so. Vontress had been engaged in doing this type of work for Pane for some 7 or 8 years. It is apparent that the drivers of these trucks had authority

from Ready Mixed to do this for Pane on this particular job whenever they were asked to perform it. In the performance of this work, both the unloading and pulling the strike-off bar, Vontress would signal the drivers of the trucks, there being only one driver to each truck, as to what he wanted them to do and they would operate the trucks they were driving accordingly.

The strike-off bar, which was owned by Pane, is a big thick piece of lumber made out of "4 by 12s." It is about 25 feet long, which was the width of the pavement, and is used to level off the concrete when it has been filled in between the forms used to contain it, being cut with a concave bow at the bottom in order to put a crown on the pavement of the street. It has roller coasters on each end, which rest on the forms located at each side of the pavement, to permit it to be moved back and forth. It has cables, about 50 feet long, which are attached to the bar by means of clevises, which cables have a hook at the other end to fasten to the truck. There is a vibrator attached to the top of the bar which vibrates the bar and thus helps to level off the cement as the bar is slowly moved forward over it. This bar belonged to Pane and was used by it in finishing the work of paving the street.

When the area between the forms had been completely filled for some distance, which usually took two truck loads of concrete, Vontress would ask the driver of the last truck emptied if he would pull the strike-off bar. The driver of that truck, whoever he might be, would then drive the truck to the center of the area between the forms and back up when Vontress signalled him to do so. The driver would back until signalled by Vontress to stop, which Vontress would do when the truck was far enough back so he could insert the hooks on the cables into openings in, or hooks attached to, the back end of the truck. When he had done so Vontress would signal the driver to go ahead, which he would do at about 1 mile an hour. When he

had gone far enough to level the area filled in with concrete Vontress would signal him to stop and then, after the cables had been released, the strike-off bar would be moved back and the process repeated as it was usually necessary to pull the strike-off bar twice to properly level the concrete. It was between the first and second pulling of the strike-off bar that Vontress was hurt when Barnes backed his truck while Vontress was in back of it releasing the cable.

There was no agreement, either oral or written, or any terms or arrangements between Pane and Ready Mixed whereby Pane was authorized to use the truck drivers of Ready Mixed for the purpose of pulling the strike-off bar with the trucks they were driving. It is apparent, however, that on this job Ready Mixed knew they were to be so used and gave its approval so the drivers could perform that service whenever they were asked to do so by Pane. It is apparent that doing so expedited the work, for the trucks were readily available to do it whereas, if Pane, on each occasion, had to move in the necessary power it would have delayed operations.

The case of Standard Oil Co. v. Anderson, *supra*, has been cited by this court as defining the various phases of relations in situations such as we have before us. Therein the court said: "It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them.

In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work and they are for the time his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking." The court therein goes on to state: "Much stress is laid upon the fact that the winchman obeyed the signals of the gangman, who represented the master stevedore, in timing the raising and lowering of the cases of oil. But when one large general work is undertaken by different persons, doing distinct parts of the same undertaking, there must be cooperation and coordination, or there will be chaos. The giving of the signals under the circumstances of this case was not the giving of orders, but of information, and the obedience to those signals showed cooperation rather than subordination, and is not enough to show that there has been a change of masters." See, also, Pappillo's Admx. v. Prairie, 105 Vt. 193, 164 A. 537.

Our cases of Mansfield v. Andrew Murphy & Son, *supra;* In re Estate of Bingaman, *supra;* and Kessler v. Bates & Rogers Constr. Co., *supra,* fall within the first classification, while the factual situation in the case itself falls in the second category, whereas the facts of this case bring it within the third, for here the services were rendered more in the nature of Pane and

Ready Mixed cooperating in coordinating the work to expedite its performance. As stated in Rice-Stix Dry Goods Co. v. Self, 20 Tenn. App. 498, 101 S. W. 2d 132, by quoting from 39 C. J., Master and Servant, § 1462, p. 1275: " 'To escape liability, the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person; and it is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary co-operation where the work furnished is part of a larger operation.' "

There is also merit to appellee's contention that the factual situation here presented brings it within the following principle stated in Shamburg v. Shamburg, 153 Neb. 495, 45 N. W. 2d 446, by quoting the following from Rhinelander Paper Co. v. Industrial Comm., 206 Wis. 215, 239 N. W. 412: " 'It is quite generally agreed that in order to transfer liability from the general employer to the one to whom the employee is loaned, there must be some consensual relationship between the loaned employee and the employer whose service he enters, sufficient to create a new employer-employee relationship. Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is created. While the employee may be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing what the new master directs him to do he is performing his duty to the employer who gave the order. * * * Consent cannot be inferred merely from the fact that the employee obeyed the commands of his master in entering the services of another.' "

In view of the foregoing we have come to the conclusion that the trial court was correct in holding as it did, that is, that Barnes performed this service as an employee of Ready Mixed in cooperation with the em-

ployees of Pane and was not a loaned or special employee in the service of Pane.

Appellant also claims the court erred in sustaining objections to certain questions asked Vontress. Objections were made thereto on the basis that the questions called for conclusions of the witness rather than seeking to establish the facts as to what he did. They relate generally to the signals given by Vontress to Barnes to advise him as to the operations of his truck while it was being emptied of cement and used to pull the strike-off bar, but used the words "direction" and "control." The objections were properly sustained, for, in the form made, they did call for conclusions. But, even so, no prejudicial error could be based thereon if it could be said that the trial court erred in so ruling for all the information in regard thereto came in under proper questions or after appellant's counsel agreed as to what he meant by the use of the words "direction" or "control," that is, what signals he gave.

Appellant also complains of the fact that the trial court ruled out an offer of proof made by it after objections to a question asked Barnes had been sustained. The offer is as follows: "I offer to prove, if the witness were permitted to answer, that he would testify that the instructions are to pull the strike-off bar for them if they asked him to." Without discussing the merits of the trial court's ruling we hold the matter could not be prejudicial for it is apparent, from the record before us, that all the drivers of Ready Mixed working on this job had authority to do so whenever they were asked to perform this service by Pane. It was apparent that Ready Mixed was doing so in order to cooperate with Pane, thus coordinating the work to an expeditious conclusion.

AFFIRMED.