## F. B. McINTIRE EQUIPMENT COMPANY

v.

## Vernon HENDERSON et al.

### No. 17244.

Court of Civil Appeals of Texas, Fort Worth.

Oct. 15, 1971.

Rehearing Denied Nov. 12, 1971.

McGown, Godfrey, Decker, McMackin, Shipman & McClane and Kent D. Kibbie, Fort Worth, Gardere, Porter & DeHay and Gordon H. Rowe, Jr., Dallas, for appellant.

Herrick, Jones & Bell and John W. Herrick, Fort Worth, for appellees.

## OPINION

BREWSTER, Justice.

The defendant, F. B. McIntire Equipment Company, is here appealing from a judgment in favor of both plaintiffs, Hen-

derson and Crabb, rendered in a suit for damages for personal injuries sustained by the two plaintiffs when the boom of a crane belonging to the defendant fell on them. The judgment awarded Henderson $161,918.55 in damages and Crabb $81,007.20 in damages.

We affirm the judgment.

In August, 1968, Beals Mechanical Contractors, Inc., had a sub-contract to install air conditioning equipment into a building at Tarleton State College at Stephenville, Texas. Both plaintiffs were working for Beals on that job. The plaintiff Henderson, although a plumber, was also the supervisor of the Beals crew which included the other plaintiff, Crabb, who was a welder. The Beals Company engaged the defendant, F. B. McIntire Equipment Company, to send to the job one of its 35 ton cranes with an operator and an oiler, without supervision, for the purpose of having the crane lift air conditioning equipment onto the roof of one of the school buildings so that the Beals Company could install the equipment. F. B. McIntire Equipment Company rented the crane, the operator and the oiler to the Beals Company for a charge of $35.00 per hour. W. A. Salter was the crane operator.

On the occasion in question the work of lifting the equipment onto the building had been completed and the crane's boom was being dismantled on the school's premises for transportation back to its base in Fort Worth, when it fell and hurt the plaintiffs.

The two plaintiffs were engaged in assisting defendant's employees in the job of dismantling the boom at the time it fell upon them.

The theory of plaintiffs' case was that their injuries were proximately caused by negligence of the defendant's employee, Salter, committed while he was acting within the scope of his employment for the defendant in dismantling the boom.

One defense to the suit that was urged by appellant was that at the time they were

injured both of the plaintiffs had become borrowed employees of appellant, F. B. McIntire Equipment Company, in the activity of dismantling the boom, that this appellant carried Workmen's Compensation Insurance at the time, and therefore could not be held liable in damages to plaintiffs for their injuries.

The court submitted special issues Nos. 7 and 8 to the jury, inquiring whether it found from a preponderance of the evidence that Henderson (in No. 7) and Crabb (in No. 8) were at the time the boom was being dismantled a special or borrowed employee of F. B. McIntire Equipment Company. To each issue the jury answered, "We do not."

By its points of error Nos. 12 and 13 defendant contends that even though the jury did find the borrowed servant issues in plaintiffs' favor, the court still erred in rendering judgment for the plaintiffs because the evidence established conclusively as a matter of law that both Henderson and Crabb were borrowed employees of the appellant, McIntire, at the time they were injured.

We overrule both points. We hold that the evidence did not establish as a matter of law that either plaintiff was a borrowed servant of appellant at the time they were injured.

We hold on that point that the evidence in this record conclusively establishes as a matter of law that the two plaintiffs were not borrowed servants of this appellant at the time in question.

The evidence offered during the trial relating to the borrowed servant question is summarized below.

Crabb testified that at all times while working on the boom he was looking to Beals Company for his orders as to what to do, but that while helping in dismantling the boom he did receive suggestions from defendant's crane operator, Salter, as to the procedures for him to follow in helping and he followed them; he followed Sal-

ter's suggestions as to what to do in a spirit of cooperation because neither he nor his foreman knew anything whatever about the technical aspects of working on a boom; his employer, Beals Company, paid him his salary for the time he spent working on the boom; on this occasion he would work a bit in helping on the crane rig and then do other things in connection with Beals Company's job and then come back and help on the rig again; if his foreman had told him to quit helping with the crane and go do some welding work, he would have done so; Salter would tell the plaintiffs when to knock out a pin from the boom and they would do so; he also told them the sequence and manner of taking the boom apart; Salter told them step by step how to take the boom apart because they did not know; in following Salter's instructions he was obeying his foreman's orders; and if he had seen something on the job that had to do with welding that needed to be done while he was helping on the boom he would have gone and done it.

Henderson testified that he had no conversation with the defendant's people to the effect that he was going to put the right to control some of Beal's employees in defendant in connection with their helping on the boom; he, in a spirit of cooperation, helped defendant's employees work on the boom; he, as the Beals Company foreman, did not relinquish his right to control his crew in the details of their work while helping with the boom; if while helping defendant on the boom something had come up that needed to be done on the plumbing work, he would have sent his men to do it and would have left the dismantling process; since he knew nothing at all about working on the boom he did follow Salter's suggestions as to the procedure to follow while working on the boom; the Beals Company paid his salary during the whole time; he, as foreman for Beals, was in charge of his crew at all times.

The defendant's crane operator, Salter, testified: that the plaintiffs asked him if they could help with the boom; he did not ask them to help; they told him at the time that they knew nothing at all about the crane rig; he could tell that by watching them; and he told them that he would assist them all that he could in working on the rig and he tried to work with plaintiffs; he told them not to do anything without him telling them to do it; working on such a rig could be dangerous if one knew nothing about it; on other occasions on other jobsites employees of other employers than defendant, in a spirit of cooperation offered to assist him in dismantling the boom; and that was what was done in this case when the plaintiffs in a spirit of cooperation offered to help him dismantle the boom; he told them what to do in helping him dismantle the boom because they were in a hurry to get him out of there because of the $35.00 an hour rental on the rig; and he would be in a hurry to get the rig out of there, too, if he had one rented at that rate, and if plaintiffs had not volunteered to help dismantle the boom he and his oiler would have done it alone.

Prior to trial the plaintiffs submitted a number of interrogatories to defendant to be answered by it in accordance with the rules of civil procedure. Among others, interrogatory No. 14 propounded to defendant by plaintiffs and its answer thereto were offered into evidence by plaintiffs and that interrogatory and defendant's answer thereto are as follows:

Interrogatory: "Please state whether the practice of using employees other than defendant's employees in dismantling the boom is a usual or unusual practice." Answer: "Generally speaking, contractors employees help dismantling the boom because the contractor is paying for the crane under an equipment rental agreement on an hourly basis."

The undisputed evidence showed that the plaintiff Henderson, who was a Beals Company supervisor, had instructed Crabb and the rest of his crew to assist Salter in both building the boom up and in disman-

tling it and that Henderson also personally assisted in both of those operations.

By appellant's own admissions in answer to interrogatories the reason for the Beals Company employees (plaintiffs) helping in dismantling the boom was to hasten the departure of the rented crane and its crew from the jobsite and thus lessen the rental cost to their employer for the use of the crane and its crew. Salter, defendant's crane operator, admitted this fact also. Crabb also testified to this fact. No evidence during the trial tended to indicate any other reason for the Beals Company employees helping to dismantle the boom. There is no question but what the service of the plaintiffs in helping dismantle the boom thus inured to the benefit of their own employer, because it helped lessen the rental that their employer, the Beals Company, would be out for the use of the crane, and in that way helped add to the profit their employer would ultimately realize from the job being done.

The evidence conclusively establishes that plaintiffs were helping dismantle the boom with the permission of defendant.

The law applied in deciding the case of Eason v. S. & E. T. R'y Co., 65 Tex. 577 (Tex.Sup., 1886) would also control a decision in this case.

The plaintiff in the Eason case was a general employee of a lumber mill that shipped lumber in defendant Railroad's cars. His job was to load the cars with lumber for his employer, the mill. The Railroad had placed a car in a certain place to be loaded by the mill employees, but in that place it could not be conveniently loaded, so to have it moved to a proper place for loading was in the interest of plaintiff's employer (the mill). Plaintiff told the Railroad Conductor of the problem and he consented to move it to a place where it could be loaded easier. The Railroad was short of a brakeman so the conductor asked the plaintiff to couple the car to the one in front of it. The plaintiff consented and in coupling the car he was hurt through the negligence of the Railroad's employees. The Supreme Court in that case held that since the service the plaintiff was performing at the time he was hurt was in furtherance of his master's interests in getting the car placed where it could be more easily loaded and the mill's lumber could sooner be sent on the way to its destination, that the plaintiff was still acting in his capacity as his employer's servant. He helped couple the car at the request of and with the permission of the Railroad Company. Although the plaintiff was there performing a service beneficial to both the Railroad and to his employer, he was doing the service for his own employer's benefit and not as an employee of the Railroad. The Railroad's acquiescence gave him the right to perform the service and the fact that he was acting in behalf of his own employer gave him the right to be protected from the Railroad employee's negligence.

This same doctrine was applied in Rhinelander Paper Co. v. Industrial Commission, 206 Wis. 215, 239 N.W. 412 (1931) and in Vontress v. Ready Mixed Concrete Company, 170 Neb. 789, 104 N.W.2d 331 (1960). The following is from the Rhinelander case:

"It is quite generally agreed that in order to transfer liability from the general employer to the one to whom the employee is loaned, there must be some consensual relationship between the loaned employee and the employer whose services he enters, sufficient to create a new employer-employee relationship. Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is created. While the employee may be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing what the new master directs him to do, he is performing his duty to the employer who gave the order. Whether or not there is in a particular case such a change of relationship is often a matter of great difficulty and as to

which reasonable minds may come to different conclusions. In this case the employment was temporary. It is clear that the claimant was performing services in obedience to the direction of the master and that there was no consent on his part, express or implied, sufficient to make him the employee of the American Engineering Company. Consent cannot · be inferred merely from the fact that the employee obeyed the commands of his master in entering the services of another."

The Supreme Court of Nebraska in the Vontress case, supra, applies the same doctrine in deciding it.

The rule announced in the cases cited above was followed in Mercury Life and Health Company v. De Leon, 314 S.W.2d 402 (Eastland, Tex.Civ.App., 1958, ref., n. r. e.) wherein the court said:

"An employee in the general employment of one employer may be temporarily loaned to another so as to become a special employee of the second employer. It is held, however, that even though an employee may be subject to the direction of a temporary master no new relationship of employment is created, if, in following the directions of the temporary master, he is doing so merely in obedience to the direction of and in the performance of his duty to his employer."

The same rule is quoted as applicable in Texas in Gipson v. Skelly Oil Co., 152 F. 2d 588 (5th Cir., 1945).

The following is from 56 C.J.S. Master and Servant:

Section 177: "Interest in work. Where the servant of one master has an interest in the work in any proper capacity and at the request or with the consent of another servant undertakes to assist in the work, he does not do so at his own risk, and, if he is injured by their carelessness, their master is responsible."

Section 328: "Interest in work. One who, in furtherance of his own interests, assists the servants of another in the performance of their work is not a trespasser, because he is lawfully in his place; he is not a fellow servant with the other servants, because he is not directly or indirectly * * * employed by the master of such servants; he is not a mere volunteer, because he does the work to further his own interests or those of his master. Therefore the master of such other servants is liable to him for injuries received as a result of their neglect * * * and the fellow-servant rule is not applicable."

The court in Dillingham v. Cavett, 91 S. W.2d 868 (Amarillo, Tex.Civ.App., 1936, writ dism.), followed the doctrine just set out in deciding that case.

The rule set out in the last sentence of the above quote from the De Leon case, supra, applies with full force in this case because the facts that call for its application exist here without dispute. Upon the occasion in question the plaintiffs were temporarily following the direction of appellant's employee, Salter, in helping to dismantle the boom because the operation was dangerous and if certain things were done out of turn it could result in disaster and because they knew nothing at all about how to dismantle a boom. Plaintiffs helped dismantle the boom with the consent of Salter (appellant) and did so in obedience to the direction of their own employer (Beals) and for the purpose of benefitting their own employer and were engaged in the scope of their employment for their own employer at the very time they were hurt.

When this rule is applied to these undisputed facts of this case, it is apparent to us that the plaintiffs, as a matter of law, were not borrowed servants of the appellant.

■ Whether a servant lent by one master to another has become the servant of the latter at a particular time is usually determined by deciding who has the right or power to control and direct the servant in the performance of the details of the

work that he is performing at the very time in question. Producers Chemical Company v. McKay, 366 S.W.2d 220 (Tex.Sup., 1963); J. A. Robinson Sons, Inc. v. Wigart, 431 S.W.2d 327 (Tex.Sup., 1968); and 56 C.J.S., Master and Servant § 330.

The U. S. Supreme Court, in the case of Standard Oil Company v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909) stated the following in connection with applying the test that we have just referred to: "Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking."

The Texas Supreme Court has referred to this quotation and applied it on at least two different occasions in determining the borrowed servant question. See Producers Chemical Company v. McKay, supra, 366 S.W.2d at page 225, and Smith Bros. v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145 at page 150 (Tex.Com.App., 1936).

The court in the Standard Oil Co. case, supra, also said:

"The giving of the signals under the circumstances of this case was not the giving of orders, but of information; and the obedience to those signals showed co-operation rather than subordination, and is not enough to show that there has been a change of masters."

In the Producers Chemical Company case, supra, the court said at page 226 of 366 S.W.2d:

"Mere directions given to McDonald as to where to hook up, when to start and when to shut down the compressor in coordinating the work of all men and machinery on the project toward the ultimate object of unloading the hole does not raise the issue that right of control of McDonald in the manner of performing his work had been transferred from Producers to Canadian River."

In Hartford Accident & Indemnity Co. v. Addison, 93 F.2d 627 (5th Cir., 1937) in discussing the question the court said: "* * * decisive test is who had the power to direct and control the employee in the performance of his work at the time of the injury, bearing in mind the distinction between authoritative control on the one hand, and mere supervision or suggestions as to the details of the work to see that it is performed according to contract, on the other. * * *

"* * * Designating what jobs Addison was to do was not so much giving orders, as of information; compliance by Addison with the directions of Sinclair's representatives in this behalf was co-operative rather than acceptance of a substitute employment."

In Cantrell v. Markham & Brown Company & Associates, 452 S.W.2d 940, at page 948 (Dallas, Tex.Civ.App., 1970, ref., n. r. e.) the court said: "* * * there is an inference that the employee remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer, * * *. 'There is no inference that because the general employer has permitted a division of control, he has surrendered it.' Restatement of Agency, § 227, pp. 500–501; * * *."

We are convinced that the evidence in this case conclusively shows that what Salter told the plaintiffs upon the occasion in question as to the things for them to do in order to help him dismantle the boom and as to when to do them were told the plaintiffs, not in the sense of being orders from an employer that had the right or power to control the plaintiffs as employees, in the doing of the details of the work, but in a sense of imparting to them information or suggestions as to the steps necessary to be taken and when to take them in order to get the boom safely dismantled. Salter knew that the work was dangerous, especially to people that were unfamiliar with the work, as were the plaintiffs. He knew that they did not know the steps to take in

dismantling the boom, and that for them to be of any help to him at all and that for their assistance not to cause a disaster it would be necessary for him to inform them of the things they should do and of the sequence in which they should be done.

One cannot read the testimony of appellant's crane operator, Salter, without being convinced that he, above all others, knew that he did not have nor claim to have the right or power as a boss or an employer to control the plaintiffs in the details of the work of dismantling the boom. He said he knew they were helping him in a spirit of cooperation and he was trying to work with them and when they first offered to help him and advised him that they did not know anything about the work he told plaintiffs that he would assist them in every way that he could.

Appellant's first 11 points are devoted to the contention that the trial court made numerous errors in admitting bits of evidence that had to do solely with the borrowed servant issue.

If we are correct in our holding that the evidence in the case that was properly admitted conclusively proved that plaintiffs were not appellant's borrowed servants in dismantling the boom, then all of the questions presented by appellant's first 11 points are immaterial because under those circumstances the admission of such evidence could not have been harmful to appellant. For a great many cases holding this see Tex.Dig., Vol. 4B, Appeal & Error, ▇▇▇▇ p. 234.

▇▇▇ Appellant, in its Points 4 and 7, contends that the trial court erred in letting the plaintiffs, Crabb and Henderson, testify as to the "spirit" in which they were following Salter's instructions in helping him dismantle the boom.

Both of them testified that they followed Salter's suggestions in a spirit of cooperation.

Appellant's crane operator, Salter, testified without objection that the two plaintiffs were helping him dismantle the boom in a spirit of cooperation.

We hold that this testimony was testimony as to a fact and therefore admissible, but, even if we assume that it was not admissible, these points do not present reversible error because of the settled rule that error, if any, in admitting evidence, is harmless where evidence substantially the same is otherwise admitted without objection during the trial. For a host of cases making this holding see Texas Digest, Vol. 4B, Appeal & Error, ▇▇▇▇▇▇ p. 223.

▇▇ In addition, when this question was propounded to Crabb the only objection by appellant was that the question called for "a present declaration of a past state of mind." We hold that an objection to that question on those grounds was insufficient to point out any vice in the question.

▇▇ In appellant's point 5 it contends that the court erred in letting Crabb answer the question as to what he would have done had his regular foreman told him to quit dismantling the boom and do welding work for his general employer.

Point 9 complains of a similar question that Henderson was allowed to answer as to what he would have done had other work arisen that needed to be done in his employer's work while he was helping dismantle the boom.

Each plaintiff testified that he would have thereupon stopped working on the boom and gone and done the other work.

The objection made to the question propounded to Crabb was that it was "argumentative and speculative" and the objection to the question asked Henderson was the same with the addition that it invaded the province of the jury and called for an opinion.

We overrule both points 5 and 9 and hold that these were proper questions and were not subject to the objections made. The case of Western Union Tel. Co. v. Mitchell, 91 Tex. 454, 44 S.W. 274 (1898)

is authority for our holding. These questions called on the witnesses to testify as to facts which only they knew.

■ The matters complained of in points 5 and 9 do not reflect reversible error for the additional reason that on redirect examination Crabb was asked this question:

"If, during the dismantling process you had seen something there at the job site that had to do with welding in connection with Beals subcontract, that had to be done then, what would you have done?" Appellant made no objection to this question and Crabb answered: "I would have had to go did it."

This question called for substantially the same evidence as the questions complained of and was not objected to. Therefore, even if we assume that the court did err in admitting the evidence complained of in these two points such errors were harmless under the holdings in the cases listed in Vol. 4B, Texas Digest, Appeal & Error, ■ p. 223.

■ At the time plaintiffs were hurt, the witness, Scott, was in the employ of appellant as a crane operator. He was not employed on the job where plaintiffs were hurt and was not present at the time. He had worked for appellant for about 22 years and during that time he had many times been required to ask employees of other contractors on other jobs for help in dismantling his boom—this as frequently as 25 to 30 times a year.

Scott was asked this question: "On these occasions, when employees of some one other than McIntire assisted you in dismantling the boom, did you have the right to control the manner and the details in which they performed their tasks of dismantling?"

It was objected to on the grounds it called for a conclusion and was a mixed question of law and fact. The court overruled the objections and the witness answered that he did not have the right to control the other contractors' employees on those occasions.

Appellant's point one urges this as an error.

During the trial, the plaintiff, Crabb, was asked: "When you were helping him put that boom together on the nineteenth, who had the right to control the manner and details in which you were doing that work, Salter or Vernon Henderson?" Appellant objected to the question on the ground that it called for a conclusion, which objection was overruled and the witness answered: " * * * I was under the direct control of my foreman which is as it should be."

Appellant's point 3 urges this as an error.

The plaintiff, Henderson, was asked: "During that * * * time, did you as foreman of the Beals Company relinquish your right to control the Beals people in the manner in which they performed the details of putting the crane together over to any employee or anyone connected with the McIntire Company?"

Appellant objected on the grounds, among others, that it called for a conclusion on a legal matter and that the question asked him a question of law. It was overruled and the witness answered, "No."

In point 8 appellant contends that this was error.

During the trial each plaintiff was asked, "to whom he owed his allegiance while engaged in dismantling the boom." Appellant objected each time that such question called for a conclusion and it was overruled. Each plaintiff answered that he owed his allegiance to Beals Company.

Appellant, in its points 6 and 10, contends that the court erred in overruling its objections to each of those questions.

Each of the questions complained of in appellant's points 1, 3, 6, 8 and 10 inquired

as to matters that were relevant to a decision of the case. The case of Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.2d 94 (1946) held that the question of to whom did the plaintiff owe his allegiance at the time he was hurt was material to a decision of the borrowed servant question, but that case did not pass on the question as to whether questions asked in the form of the ones we have here were proper.

We hold that each of the questions complained of in appellant's points 1, 3, 6, 8 and 10 called for conclusions of the witness and that they were each subject to the objection made to them on that ground, and that the trial court erred in each instance when he overruled the objections made to such questions.

In the case of Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97 (Tex. Com.App., 1939), the borrowed servant question was involved. The question to be decided was whether Rhone was working for his regular employer or as a borrowed servant for the general contractor on the job involved at the time he was hurt. During the trial both Rhone and his employer McDaniel were permitted to testify that at the time Rhone was hurt he was then working for the general contractor. The Court said about such testimony, at page 99, the following: "Those statements did not amount to any evidence at all. They were but bare conclusions and therefore incompetent, * * *."

The case of Crow v. Continental Oil Co., 115 F.2d 740 (5th Cir., 1940), was a suit for damages for the wrongful death of a welder, Crow, who was killed when a tank that he was working on exploded. During the trial another welder, one Jones, was asked: " 'When you do welding for the Continental Oil Company, I will ask you to tell the jury who has charge of the entire welding operations, the welder or the foreman on the job? Is it the welder? A. It always has been in my case, I have always been in charge of any work I was doing * * * no one else told me what

to do. * * *' " That Court said at page 743: "This line of questioning was improper. The questions called for conclusions * * *."

However, we conclude that the admission of the evidence was harmless error for several reasons.

1. All of the evidence complained of in appellant's first eleven points pertained solely to the borrowed servant issue. The undisputed evidence in the case established that issue conclusively in the appellee's favor. Therefore, even if the evidence complained of in appellant's first eleven points was erroneously admitted the error was harmless. See 4B Texas Digest, Appeals & Error, ▮▮▮▮▮▮▮ p. 234, and cases there cited. In addition to what we have said we overrule all eleven of those points for the reasons just stated.

2. The findings on the borrowed servant question were fully supported by evidence other than this conclusion evidence. Since the questioned evidence related solely to that "borrowed servant" issue, its admission was harmless error for that additional reason. See Louisiana Ry. & Nav. Co. of Texas v. Kimball, 23 S.W.2d 398 (Texarkana Tex.Civ.App., 1930, no writ hist.); McClintic v. J. D. Young Corporation, 41 S.W.2d 686 (El Paso, Tex.Civ.App., 1931, reversed on other grounds in (Tex.Com. App.), 66 S.W.2d 676); Cain v. Fontana, 423 S.W.2d 134 (San Antonio, Tex.Civ. App., 1967, ref., n. r. e.); Brister v. Lasiter, 444 S.W.2d 331 (El Paso, Tex.Civ. App., 1969, ref., n. r. e.); Southern Nat. Ins. Co. v. Wood, 63 Tex.Civ.App. 319, 133 S.W. 286 (1910, no writ hist.); and Walker v. Kellar, 218 S.W. 792 (San Antonio, Tex.Civ.App., 1920, no writ hist.).

3. In addition to what we have already said, we have examined the entire record in this case and have concluded that the admission of the conclusion evidence complained of in appellant's points did not amount to such a denial of the appellant's rights as was calculated to cause and probably did cause the rendition of an improper

judgment. The admission of such evidence was therefore harmless error under the provisions of Rule 434, Texas Rules of Civil Procedure.

By its Points 14 through 17, inclusive, appellant contends that the trial court erred in awarding the plaintiffs the amount of damages they recovered because such awards are unreasonably excessive, are not sufficiently supported by the evidence, resulted from improper consideration by the jury, they are unjust, some of it should be remitted, and are so against the great weight and preponderance of the evidence as to clearly show bias and improper motive on the jury's part.

The court in the case of Bluebonnet Express, Inc. v. Foreman, 431 S.W.2d 45, at page 49 (Houston, Tex.Civ.App., 14th Dist., 1968, no writ hist.), said the following while considering similar points of error:

"* * * while the recovery * * * appears to be rather large, if there is any reason in the jury's verdict, and if we believe that the jury actually considered the evidence and the lawful inferences therefrom and was not influenced by passion, prejudice or partiality, it is our duty to affirm the judgment. It is, of course, our further duty to view the evidence and inferences in support of the award in the light most favorable to the award of the jury. * * * The appellant has the burden of establishing that the jury's evaluation of the damages was erroneous."

In considering these four points we have examined the entire record. When the rules announced in the Bluebonnet case, just mentioned, are applied to the facts of this case, we are convinced that we should and therefore do overrule each of those points.

We hold that the awards were not excessive and that there was sufficient evidence to support the jury's award.

Appellant's Points 18, 19, 20, 21 and 22 complain that the trial court erred: (18) in letting Crabb testify as to the percent of a welder's duties he was restricted by his injuries from doing; (19) in letting Henderson testify as to the percent of a plumber's overall duties that he could not do because of his injuries; (20) in letting the witness, Fortner, testify as to the percent of a plumber's duties that included lifting of weights of over 25 pounds; (21) in letting Fortner testify as to the percentage that a plumber's earning capacity is diminished when he is unable to lift weights in excess of 25 pounds, work on ladders, and in cramped positions; and (22) the cumulative prejudicial effect of the court's action in letting these witnesses answer the questions referred to in Points 18, 19, 20 and 21 were damaging to appellant.

We hold that all of the questions complained of in appellant's Points 18 through 22, inclusive, were proper questions and that the trial court did not err in overruling the objections made to any of them. See Texas & P. Ry. Co. v. Watts, 36 Tex. Civ.App. 29, 81 S.W. 326 (1904, ref.); American Mutual Liability Insurance Co. v. Nall, 359 S.W.2d 106 (Texarkana, Tex. Civ.App., 1962, no writ hist.); and International & G. N. R. Co. v. Locke, 67 S.W. 1082 (Tex.Civ.App., 1902, ref.).

We also overrule Point 18 because on cross-examination Crabb was asked by appellant's own counsel without objection as to what his reduced capacity to perform the normal duties of a welder was and he answered "about fifty percent." The witness Eugene Atkins was also permitted to testify to the same thing without objection.

Under these circumstances the error, if any, was waived (3 Tex.Jur.2d 396, Appeal and Error, Sec. 124) and was harmless. For many cases holding this see 4B Texas Digest, Appeal & Error, p. 223.

Although appellant objected to the question referred to in Point 19, the record

does not reflect that the court ever ruled on the objection. These proceedings therefore do not reflect an error of the trial court and we overrule Point 19 for that additional reason. To preserve the point it was necessary that appellant procure a ruling on his objection from the trial court.

By appellant's points 23 through 27 it is contended that the court erred in entering judgment for appellees because (in 23 and 24) as a matter of law both appellees failed to keep a proper lookout which proximately caused their injuries; (in 25 and 26) both appellees were guilty of contributory negligence as a matter of law in being under the boom when the bottom pin was knocked out, which negligence as a matter of law proximately caused their injuries; and (in 27) the court erred in failing to find that Henderson was negligent as a matter of law in knocking out the bottom pin at the time in question, which negligence proximately caused appellees' injuries.

The principles of law applicable in determining whether or not a plaintiff is guilty of contributory negligence as a matter of law are stated in the opinion in Blanks v. Southland Hotel, 149 Tex. 139, 229 S.W.2d 357, at page 360, (1950) as follows: " 'It is elementary that the question of contributory negligence is generally, by reason of the very nature of the defense, one of fact for the jury to decide. * * * According to the authorities above cited and many others ([Gulf, Colorado & S. F. Ry. Co. v. Gasscamp] 69 Tex. 545, 7 S.W. [227] 228), "In order that an act shall be deemed negligent per se, * * * it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it." * * * It has been said that contributory negligence is a question of fact for the jury when the evidence shows that the plaintiff, with knowledge or chargeable with knowledge of the danger, exercised some care.' "

The evidence in the case showed that both plaintiffs knew nothing at all about dismantling the crane boom and that appellant's crane operator, Salter, knew this fact. Salter told them he would help them all he could and was giving them instructions as to the steps to be taken and when to take them in dismantling the boom on this occasion. He told them not to take any step until he told them to take it, because there are things about a crane rig that can be dangerous if you do not know anything about such a rig. He said that one that did not know about such a rig would not realize these dangers. Salter said that if the pins came out when the pendant lines were taut, a disaster would occur. The evidence showed that Salter had gone to the crane, lifted the end of the boom about three feet above the ground, thus rendering his pendant line taut. Plaintiffs testified that he had told them that when he did that for them to proceed to knock out all of the bottom pins from the boom, and that they proceeded to do as he said, thinking Salter knew what he was talking about. They did not realize the dangers involved or that a hinge effect would occur when the bottom pins were knocked out, or they would not have knocked them out. The pendant lines were taut when they did knock out the bottom pins pursuant, as they said, to Salter's instructions and the disaster that brought about this law suit did occur. Crabb testified that he was not under the boom when it fell, but was to one side and was struck by the boom when it wobbled while falling.

We hold that under the facts of this case the contributory negligence questions were fact issues and were properly submitted to the jury for its determination.

We have considered all of appellant's points of error and overrule them all.

The judgment is affirmed.